ROSE, Joseph, Appellant in
No. 88–1634

v.

BARTLE, Paul, Asher, Robert, Smyth, Joseph A. Jr., Goodman, Bert, Vance, Oscar, Montgomery County, and Republican Party of Montgomery County. (D.C.Civ. No. 86–6255).

REED, Trudy W., Appellant in
No. 88–1646

v.

BARTLE, Paul B., Banning, Rita C., Demaioribus, James R., collectively as the Salary Board of Montgomery County, Bartle, Paul, individually, Asher, Robert, Smyth, Joseph A., Jr., Goodman, Bert, Vance, Oscar, Montgomery County, Republican Party of Montgomery County, Commissioners of the County of Montgomery (D.C.Civ. No. 87–6405).

HILL, Frederick B.

v.

BARTLE, Paul, Asher, Robert, Smyth, Joseph A., Jr., Goodman, Bert, Vance, Oscar, Montgomery County, and Republican Party of Montgomery County (D.C. Civil 86–6963).

HILL, Frederick B.

v.

BARTLE, Paul, Asher, Robert, Smyth, Joseph A., Jr., Goodman, Bert, and Republican Party of Montgomery County, Montgomery County (D.C. Civil 87–3927).

Appeal of Frederick HILL,

KOLIMAGA, Walter, Appellant in
No. 88–1653

v.

BARTLE, Paul, Asher, Robert, Montgomery County, and Republican Party of Montgomery County (D.C. Civil No. 87–0804).

Nos. 88–1634, 88–1646, 88–1650
and 88–1653.

United States Court of Appeals,
Third Circuit.

Argued Dec. 13, 1988.

Decided March 20, 1989.

Adam Thurschwell (argued), David Kairys, Kairys & Rudovsky, Philadelphia, Pa., for Rose, Joseph, Appellant No. 88–1634.

Randolph A. Scott (argued), Randolph Scott Associates, Warrington, Pa., for Reed, Trudy W., Appellant No. 88–1646.

Richard J. Lyons (argued), Connolly, Candor & McAndrews, Doylestown, Pa., for Frederick Hill, Appellant No. 88–1650.

James E. Beasley, Thomas A. Sprague (argued), Beasley, Casey, Colleran, Erbstein, Thistle, Kline & Murphy, Philadelphia, Pa., for Kolimaga, Walter, Appellant No. 88–1653.

John F. Smith, III, Mark J. Levin (argued), Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for Montgomery County & Paul Bartle.

Mary MacNeil Killinger, Dist. Atty's Office, Norristown, Pa., for Montgomery County.

Daniel J. Ryan, Douglas J. Kent (argued), LaBrum and Doak, Philadelphia, Pa., for Robert Asher, et al.

Charles W. Craven, Marshall, Dennehey, Warner, Coleman, & Goggin, Philadelphia, Pa., for Robert Asher.

Gregory T. Magarity (argued), Debra Klebanoff, Stanley R. Scheiner, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for Bert Goodman, et al.

David H. Marion (argued), Edward T. Ellis, David Zalesne, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for Joseph A. Smyth, Jr.

Before GIBBONS, Chief Judge, and GREENBERG and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GREENBERG, Circuit Judge.

### Table of Contents

I. Background ............................................. 335

 A. The Underlying Facts .................................... 335
 B. The Development of this Litigation ...................... 337

II. Procedural Challenge ..................................... 329

III. Section 1983 Claims ..................................... 343
 A. Prosecutorial Immunity ................................. 343
 1. Subornation of Perjury ............................ 343
 2. Disclosure of Secret Grand Jury Information .......... 345
 B. Statute of Limitations ................................. 347
 1. Malicious Prosecution ............................. 348
 2. False Arrest and Abuse of Process ................... 350
 3. Conspiracy claims ................................. 352
 C. Probable Cause ........................................ 352

IV. RICO Claims ............................................. 355
 A. Section 1962(a) ........................................ 356
 B. Section 1962(c) ........................................ 358
 1. Person/Enterprise Identity .......................... 358
 2. Racketeering Activity .............................. 359
 3. Pattern of Racketeering Activity .................... 363
 C. Section 1962(d) ........................................ 365

V. Instructions on Remand .................................... 367

This appeal consolidates the claims of four separate appellants whose complaints are grounded in the same alleged misconduct of the defendants. The plaintiff-appellants were employed in the office of the sheriff of Montgomery County, Pennsylva-

nia. Frederick Hill was the elected sheriff, Joseph Rose the chief deputy sheriff, Walter Kolimaga a lieutenant, and Trudy W. Reed the office manager. Rose, Kolimaga, and Reed were discharged and Hill was defeated in his reelection bid after a grand jury presentment against Michael Rebar, a captain in the sheriff's office, named them in connection with Rebar's alleged criminal activity. Thereafter, additional presentments recommended criminal charges against each of the plaintiffs.

The defendants are individuals who at the times material to this action held public and party offices in Montgomery County, in the Republican Party organization and in the county itself. Paul Bartle was the Chairman of the Montgomery County Commission, the county governing body, Robert Asher was the Chairman of the Republican Party, Joseph A. Smyth, Jr. was the district attorney, Bert Goodman was an assistant district attorney, and Oscar Vance was the chief of Montgomery County detectives. Bartle along with Rita C. Banning and James R. DeMaioribus constituted the Salary Board of Montgomery County. These individuals and the Republican Party of Montgomery County, the salary board, the commissioners of the county, and the county, were named as defendants by one or more of the plaintiffs.

The plaintiffs allege that the presentments were politically motivated and illegally obtained to force their resignations or provide pretexts for their dismissal and that the defendants engaged in a conspiracy to violate their civil rights. Consequently, plaintiffs filed complaints asserting claims under either or both 42 U.S.C. § 1983 and 18 U.S.C. §§ 1961-68 (RICO), in addition to pendent state law claims. The plaintiffs' complaints were dismissed by Judge Giles of the United States District Court for the Eastern District of Pennsylvania in four separate summary judgment orders.

On appeal, the plaintiffs contend that the district court failed to follow the proper procedures for granting summary judgment. In addition, they argue that their complaints adequately alleged section 1983

and RICO claims and that the defendants failed to demonstrate that there was no genuine dispute as to any material issue of fact and thus were not entitled to summary judgment.

We have appellate jurisdiction under 28 U.S.C. § 1291. The district court had jurisdiction over the section 1983 claims, the RICO claims and the pendent state law claims under 28 U.S.C. § 1343, 18 U.S.C. § 1964(c), and 28 U.S.C. § 1331.

In his memorandum opinions Judge Giles stated that he notified the parties that the then pending "motions to dismiss [filed by defendants] would be considered as motions for summary judgment." *Rose v. Bartle*, 692 F.Supp. 521, 524 (E.D.Pa.1988); *Reed v. Bartle*, No. 87-6495, slip op. at 3 (E.D.Pa. July 22, 1988) [1988 WL 78030]; *Hill v. Bartle*, Nos. 86-6963, 87-3927, slip op. at 3 (E.D.Pa. July 22, 1988) [1988 WL 78067]; *Kolimaga v. Bartle*, No. 87-0804, slip op. at 2 (E.D.Pa. July 22, 1988) [1988 WL 77864]. We conclude, however, that the notice was ambiguous and that, consequently, the plaintiffs were denied adequate opportunity to oppose the motions. We must, therefore, reverse the summary judgments unless there was no set of facts on which the plaintiffs could have prevailed. Under this standard we find that some of the plaintiffs' counts were properly dismissed while others were not. Accordingly, we will affirm in part, reverse in part, vacate in part and remand for further proceedings.

## I. BACKGROUND

### A. *The Underlying Facts*

An election at which Hill, the incumbent sheriff was expected to run for reelection, was scheduled for November 8, 1983, in Montgomery County. Prior thereto on July 11, 1983, Smyth, Goodman, and Vance instituted grand jury proceedings to investigate allegations of misconduct in the sheriff's office.

The grand jury issued an interim presentment in August 1983, recommending charges against Michael Rebar, a captain in the sheriff's office. This present-

ment, like one later returned, detailed the testimony given in support of the conclusions reached. *See* Rose app. at 172. The criminal charges included 67 counts of "macing", defined by 25 Pa.Stat.Ann. § 2374 as the coercive solicitation of political contributions from public employees by public officers or members of political committees. Rebar eventually pleaded guilty to 48 counts of macing. *See* Rose app. at 261, 570. The presentment also recommended that charges be brought for four counts of conducting an illegal lottery as a funding mechanism for the macing efforts. These charges were brought and Rebar eventually pleaded guilty to them. *See* Rose app. at 261, 570. The grand jury recommended additional counts of obstructing administration of law or other government functions and hindering apprehension or prosecution. *See* Rose app. at 261.

The August 1983 presentment also named Hill, Rose, Kolimaga, and Reed in connection with Rebar's alleged criminal activity and as a result Rose, Kolimaga, Reed, and Rebar were fired in August 1983. Hill was defeated in his bid for re-election after the Republican Party failed to endorse him. *See* Hill Amended Complaint ¶ 49; *see also* Reed Amended Complaint ¶ 27–28. Hill, Rose, Kolimaga, and Reed allege that they did not direct Rebar's activities but that Rebar, a Republican committeeman, acted on behalf of the defendants. *See* Rose app. at 94, 570–72. The defendants maintain that Rebar's activities were directed by Hill, Rose, Kolimaga, and Reed as a means to finance Hill's reelection campaign.

In November 1983, the grand jury returned a second presentment recommending charges against Hill, Rose, Kolimaga, and Reed. *See* Rose app. at 87–171. Consequently, Vance swore out a criminal complaint and an affidavit of probable cause charging each of the plaintiffs with 450

counts of macing and charges related to macing.[1] *See, e.g.,* Rose app. at 264–66.

Criminal complaints were issued against the plaintiffs in March 1984 following which District Justice John Murray held a preliminary hearing on the charges lasting 14 days over six months. On October 9, 1984, at the close of the hearing, Murray held over 246 of the charges against Rose for trial, *see* Rose Amended Complaint ¶ 22, and over 100 of the charges against Hill and Reed, *see* Hill Amended Complaint ¶ 21; Reed Amended Complaint ¶ 35. Certain charges were also held over against Kolimaga. *See* Kolimaga Complaint ¶ 23.

According to his brief, at a trial ending November 28, 1984, Hill was acquitted of the macing charges. *See* Hill brief at 3. In early December 1984 Rose was informed that the new District Attorney was dropping all charges against him. *See* Rose Amended Complaint ¶ 23. At a trial ending in March 1985 Hill was acquitted of the election code violation charges. *See* Hill brief at 3. The charges against Rose and Kolimaga were formally dismissed in February or March 1985. *See* Rose Amended Complaint ¶ 23; Kolimaga Complaint ¶ 24. Some of the charges against Reed were dismissed by the court and she was acquitted by a jury of the remaining charges. *See* Reed Amended Complaint ¶ 30.

The essence of the complaints filed by these plaintiffs is the allegation of a conspiracy among high-level officials of Montgomery County and the county Republican Party maliciously to prosecute them shortly before the November 1983 election to force then-Sheriff Hill out of office. Allegedly, the defendants sought to replace Sheriff Hill with someone who would cooperate in their efforts to extend party patronage, macing, and other forms of political influence within the sheriff's office.

---

1. The affidavit of probable cause summarized the charges as: (1) 75 counts of violation of the Pennsylvania Election Code, 25 Pa.Stat.Ann. §§ 2374–75 (macing); (2) 75 counts of violation of the Pennsylvania Crimes Code, 18 Pa. Cons. Stat.Ann. § 903 (criminal conspiracy); (3) 75 counts of violation of the Pennsylvania Crimes Code, 18 Pa. Cons. Stat.Ann. § 3923 (theft by extortion); (4) 75 counts of violation of the Pennsylvania Crimes Code, 18 Pa. Cons. Stat. Ann. § 903 (criminal conspiracy); (5) 75 counts of violation of the Pennsylvania Crimes Code, 18 Pa. Cons. Stat.Ann. § 5301 (official oppression); and (6) 75 counts of violation of the Pennsylvania Crimes Code, 18 Pa. Cons. Stat. Ann. § 903(a)(1) & (2).

B. *The Development of This Litigation*

On October 27, 1986, Rose filed a complaint which named Bartle, Asher, Smyth, Goodman, Vance, the county, and the party as defendants and which contained section 1983 and RICO counts. In a third count Rose pleaded pendent state law claims of false arrest, malicious prosecution, malicious use and abuse of process, intentional infliction of emotional distress, outrageous conduct, defamation, and civil conspiracy.

On November 28, 1986, Hill filed a complaint in No. 86–6963 under section 1983 which named the same defendants and contained the same pendent state law claims as Rose's complaint.

On February 12, 1987, Kolimaga filed a complaint which named Bartle, Asher, the county, and the party, but not Smyth, Goodman, or Vance, as defendants and which stated section 1983 and RICO counts and a count containing the same pendent state law claims as alleged by Rose.

On June 1, 1987, Hill filed a complaint in No. 87–3927 which named Bartle, Asher, Smyth, Goodman, and the party, but neither Vance nor the county, as defendants and which contained a single RICO count.

The defendants in the Rose case filed motions under Rule 12(b)(6) and Rule 12(c) and also moved to limit discovery, and Rose filed a motion to compel discovery. After a hearing on these motions on August 12, 1987, Judge Giles directed Rose to file an amended complaint and stayed discovery pending his ruling on the sufficiency of the pleadings. At that time Rose expressly requested that the district court inform him before converting defendants' motions into motions for summary judgment. *See* Rose app. at 545–49. Hill and Kolimaga did not participate in the hearing.

On September 21, 1987, Rose filed an amended complaint which named the same defendants and which contained the same three counts and, on September 25, 1987, he filed a supplemental memorandum in opposition to the motions to dismiss. *See* Rose app. at 4–5, 554–87, 588–98.

On October 13, 1987, Reed filed a complaint which named all of the defendants Rose had named, including Bartle individually. Additionally, Reed named the Commissioners of Montgomery County and Rita C. Banning, James R. DeMaioribus, and Bartle, collectively, as the Salary Board of Montgomery County, as defendants. Reed's complaint stated section 1983 and RICO counts and a count containing the same pendent state law claims alleged by the other plaintiffs. *See* Reed app. at 3, 7–19. Thus, at that point there were five separate actions pending, two brought by Hill, and one by each of the other plaintiffs.

The defendants responded to these complaints by filing motions to test the sufficiency of the pleadings. In Hill's section 1983 case, during February or March 1987, each of the defendants other than Smyth filed a Rule 12(b)(6) motion. On February 23, 1987, Smyth filed an answer which included as an affirmative defense the claim that the amended complaint failed to state a claim upon which relief could be granted and which attached as exhibits copies of the presentments of August 1983 and November 1983. On April 7, 1987, Smyth moved for a judgment on the pleadings under Rule 12(c). *See* Hill app. at 6, 18–19, 35–36, 50–60 62–63, 82–85.

During March 1987 each of the defendants in Kolimaga's action responded to his original complaint by filing motions to dismiss under Rule 12(b)(6). On April 20, 1987, Kolimaga filed a memorandum of law in opposition to the motions to dismiss to which no exhibits were appended.

During August and September 1987, each of the defendants other than Smyth filed a Rule 12(b)(6) motion to dismiss Hill's RICO complaint. *See* Hill app. at 3, 141–42, 152–53, 162–63. On October 15, 1987, Smyth filed a motion which sought the alternative remedies of striking his name from Hill's complaint, under Rule 12(f), or dismissing the complaint against him, under Rule 12(b)(6). *See* Hill app. at 3, 171–72.

On October 23, 1987, Smyth filed an answer to Rose's amended complaint which included as an affirmative defense the claim that the amended complaint failed to

state a claim upon which relief could be granted and which attached as exhibits copies of the presentments of August 10, 1983 and November 10, 1983. Rose app. at 603. On October 23, 1987, Bartle and the county filed a motion to dismiss under Rule 12(b)(6) to which was attached an exhibit containing selected excerpts from the November 10, 1983, presentment. *See* Rose app. at 5, 87, 172, 621–23, 676–83. On October 26, 1987, Goodman and Vance filed a motion to dismiss under Rule 12(b)(6). *See* Rose app. at 684–85. The remaining defendants, Asher and the party, filed a Rule 12(b)(6) motion on November 6, 1987. *See* Rose app. at 694–96. On December 4, 1987, Smyth renewed his motion for a judgment on the pleadings under Rule 12(c). *See* Rose app. at 5. Rose and the defendants filed memoranda in support of their respective positions on the motions to dismiss.

On December 29, 1987, Smyth filed his answer to Reed's original complaint which included as an affirmative defense the assertion that the complaint failed to state a claim upon which relief could be granted and which attached as exhibits copies of the presentments of August 10, 1983 and November 10, 1983. *See* Reed app. at 23; 32, Rose app. at 87, 172. During January 1988 all of the defendants other than Smyth filed motions to dismiss Reed's complaint pursuant to Rule 12(b)(6). *See* Reed app. at 3, 36–37, 65–67. On January 28, 1988, Smyth filed a motion for judgment on the pleadings pursuant to Rule 12(c). *See* Reed app. at 3, 81–84.

The plaintiffs and the defendants filed memoranda of law in support of their respective positions on the motions to challenge the sufficiency of the pleadings. On January 22, 1988, Judge Giles entered an order in Rose's action which stated in pertinent part:

> The parties are hereby notified that the court shall consider the pleadings, and the documentary or sworn attachments thereto, in deciding any motion pressed pursuant to Fed.R.Civ.P. 12(b)(6). Any party desiring to submit any further brief or document in opposition or support of such motions must do so by February 10, 1988.

Rose app. at 772.

Orders employing this same language were filed in all of the other cases on January 26, 1988, except for Hill's RICO case. *See* Reed app. at 80; Hill app. at 207; Kolimaga app. at 68. The time limit for the submission of briefs and other documents was extended until February 17, 1988 for the Rose litigation. The deadline was February 26, 1988, in the Reed, Kolimaga, and Hill section 1983 cases.

On February 17, 1988, in response to Judge Giles's order, Rose filed a "Supplemental Response, Submissions, and Memorandum" which observed that the January 22, 1988, order was ambiguous as to whether Judge Giles intended to rule on the motions to dismiss or whether he intended to convert the motions and rule on summary judgment. *See* Rose app. at 775–82. Rose's memorandum specifically requested that Judge Giles lift a stay of discovery which he had entered before ruling on summary judgment if that was his intention. In fact, because of the stay, Rose's attempt for discovery had been frustrated and the stay was being honored in the other cases as well. In addition, Rose's memorandum referred to and incorporated his affidavit of February 16, 1988 and an affidavit of Bernard McNulty, an assistant district attorney, which were submitted for consideration if the court was converting the motions. The McNulty affidavit stated that he had shredded certain records of the District Attorney's Office relating to the prosecutions of Hill, Reed, Kolimaga, and Rose, but that expungement orders relating to the destruction of these documents did not cover the shredding of Rose's file. The Rose affidavit contained thirty-one pages of testimony in support of the claims in his amended complaint. The Rose affidavit also stated that "I will not be able to prosecute my case or further counter specific facts asserted in the presentment without the power to subpoena witnesses and depose defendants and without access to the documents in control of the defendants and other parties." Rose app. at 784, 788. Several of the defendants named in the

Rose case filed memoranda of law in reply to Rose's supplemental response.

On February 23, 1988, Hill responded to Judge Giles's order by filing a motion for leave to amend both his complaints, attaching a copy of the amended complaint consolidating his section 1983 and state law claims with his RICO claim. *See* Hill app. at 3, 6, 209–13. On March 10, 1988, the district court granted the motion to amend the section 1983 complaint and on March 18, 1988, it allowed Hill to amend his RICO complaint. *See* Hill app. at 215, 216. The amended complaint no longer named Vance as a defendant and it did not assert RICO claims against Smyth or Goodman. *See* Hill app. at 225–53. Hill attached copies of Rose's February 16, 1988, affidavit and Bernard McNulty's affidavit as exhibits to his amended complaint. *See* Hill app. at 225, 255–86, 288. In March and April 1988, Smyth refiled his answer including the Rule 12(b)(6) affirmative defense and the other remaining defendants relied pending Rule 12(b)(6) motions.

On February 24 and 25, 1988, the defendants in Kolimaga's action filed supplemental memoranda of law in support of the motions to dismiss. One memorandum included a copy of the motion to dismiss Rose's amended complaint and the memorandum of law in support of the Rose dismissal. *See* Kolimaga app. at 69, 74, 77. The memorandum filed in Rose's case included an exhibit containing eight pages of selected excerpts from the November 10, 1983, presentment. *See* Kolimaga app. at 77, 129–36. Kolimaga did not respond to Judge Giles' order by seeking to amend his complaint nor did he file any briefs, memoranda, or affidavits after entry of the January 26, 1988, order.

On February 26, 1988, Reed responded to Judge Giles's order by filing a motion for leave to amend her complaint, attaching a copy of the amended complaint. The amended complaint named the same defendants and contained the same three counts. The district court granted the motion to amend the complaint on March 10, 1988, by which time Reed had supplied copies of Hill's amended complaint and Rose's affidavit as exhibits to be attached to her amended complaint. *See* Reed app. at 3, 135–38, 157, 162, 163, 191–220, 221–52. In June 1988 the defendants filed anew their Rule 12(b)(6) motions and Smyth's answer which included a Rule 12(b)(6) affirmative defense. *See* Reed app. at 3, 259, 263, 402–17.

On July 22, 1988, Judge Giles granted the motions to dismiss each of the four plaintiffs' complaints. The plaintiffs appeal from these orders.

## II. PROCEDURAL CHALLENGE

Judge Giles converted the motions to dismiss into motions for summary judgment in each of these actions.[2] *See Rose v. Bartle*, 692 F.Supp. at 524; *Reed v. Bartle*, No. 87–6495, slip op. at 3; *Hill v. Bartle*, Nos. 86–6963, 87–3927, slip op. at 3; *Kolimaga v. Bartle*, No. 87–0804, slip op. at 2.

▮▮▮▮ Only Kolimaga argues that the determination should be characterized as a Rule 12(b)(6) dismissal rather than as summary judgment.[3] Kolimaga brief at 3. We

---

**2.** It is not clear whether the district court also intended to convert Smyth's Rule 12(c) motion which he had renewed in Rose's suit.

**3.** Although each of the opinions recites that the district court converted the motions to dismiss into motions for summary judgment, the accompanying orders each state that the claims are "dismissed". In light of this styling further analysis is required to classify properly the district court's disposition of these cases.

Hill, Rose, and Reed each filed a copy of Rose's February 16, 1988, affidavit in their respective actions. In Rose's case the affidavit was filed in opposition to the pending motions to dismiss and, thus, it clearly comprised a matter outside the pleading which, if not excluded by the court, required the court to convert the pending motions to dismiss into motions for summary judgment.

Hill and Reed, however, filed copies of Rose's affidavit as an exhibit to their amended complaints. Fed.R.Civ.P. 10(c) states "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes," *accord Aralac, Inc. v. Hat Corp. of Am.*, 166 F.2d 286, 289 n. 2 (3d Cir.1948), and respected commentators have observed that:

[b]ecause Rule 10(c) provides that the writing becomes a part of the pleading for all purposes, the contents of any attached writing must be considered in determining the exist-

have previously stated that the label a district court places on its disposition is not binding on an appellate court. *See Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 443 (3d Cir.1977) (citing *Tuley v. Heyd*, 482 F.2d 590, 593 (5th Cir.1973)), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978). Here, however, we are not concerned with labels inasmuch as we conclude for the reasons we set forth that a standard of review equivalent to that of a Rule 12(b)(6) determination is required in each of these four cases.

Rule 12(b) and Rule 12(c), by identical language, require that when a district court converts motions under them into motions for summary judgment, the procedures of Rule 56 govern.

If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

█ When this conversion takes place all parties must be given the opportunity to present material to the court. The parties can exercise this opportunity only if they have notice of the conversion. A comparison of the requirements of Rule 56 with the procedures employed in this case demonstrates that the district court did not provide adequate notice of its conversion of the motions to dismiss.

Fed.R.Civ.P. 56(c) includes two prerequisites to a summary judgment ruling. The Rule requires that the parties have at least ten days notice before the court may consider the motion, a requirement logically connected to the second prerequisite: the opportunity to submit "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or oppose the motion for summary judgment.[4]

ence of a claim for relief or a defense on a motion to dismiss for insufficiency, or in appealing from a dismissal, or in deciding a motion for summary judgment.
5 C. Wright & A. Miller, Federal Practice and Procedure § 1327, at 490–91 (footnotes omitted); *see also Park–In Theatres, Inc. v. Paramount–Richards Theatres, Inc.*, 81 F.Supp. 466, 470 (D.Del.1948) (considering on a Rule 12(b)(6) motion the terms of the operative contract which had been incorporated as an exhibit), *aff'd per curiam*, 185 F.2d 407 (3d Cir.1950), *cert. denied*, 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373 (1951).
The case law demonstrates, however, that the types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically, contracts, notes, and other "writing[s] on which [a party's] action or defense is based", 5 C. Wright & A. Miller, *supra*, § 1327, at 489. "[L]engthy exhibits containing ... evidentiary matter should not be attached to the pleadings." *Id.* In *Schnell v. City of Chicago*, 407 F.2d 1084 (7th Cir.1969), it was held, however, that an affidavit could be considered a part of the pleadings for purposes of granting a Rule 12(b)(6) motion. We do not believe that an affidavit is a "written instrument" as that term is used in Rule 10(c). To hold otherwise would elevate form over substance by drawing a distinction between an affidavit filed with an answer and an affidavit filed with a motion to dismiss under Rule 12(b)(6). In addition, this would further blur the distinction between summary judgment and dismissal for failure to state a claim upon which relief

could be granted. Accordingly, we conclude that Rose's affidavit constitutes a matter outside the pleading in both the Hill and Reed cases and that as a result if Judge Giles did not exclude it he was required to convert the Rule 12(b)(6) motions in these cases into motions for summary judgment.

Inasmuch as Judge Giles did not exclude the affidavit, this analysis demonstrates that neither Hill, Rose, nor Reed could successfully contend that their suits were disposed of by way of Rule 12(b)(6) dismissal rather than summary judgment. Only Kolimaga's claim requires further analysis.

4. Inasmuch as Rule 56 appears to anticipate that a court will hold a hearing on a summary judgment motion we observe that in some cases holding a hearing may be a third prerequisite. *Cf. Season–All Industries, Inc. v. Turkiye Sise Ve Cam Fabrikalari, A.S.*, 425 F.2d 34, 39 (3d Cir. 1970) (criticizing the granting of summary judgment when a district court's orders requesting briefs on the Rule 56 motion "set no time for a hearing, although Rule 56(c) requires that a motion for summary judgment must be served at least 10 days before the time 'fixed for the hearing,' and authorizes the adverse party to serve opposing affidavits 'prior to the day of hearing.'"). The category of cases in which a hearing is required is relatively small since Fed. R.Civ.P. 78 expressly allows a district court to rule on motions without providing an opportunity for an oral argument. This Rule states, in pertinent part: "the [district] court may make provision by rule or order for the submission

The district court's July 22, 1988, orders granting summary judgment were preceded by more than ten days by the orders of January 22, 1988, and January 26, 1988, on which the district court relied for compliance with the notice requirement of Rule 56. On appeal no party contests the timing of these orders. Instead the plaintiffs contend that the content of the orders was inadequate to provide notice of conversion; they argue that they were unaware that the court was even considering summary judgment.

As quoted above, the orders of January 22, 1988, and January 26, 1988, stated:

> The parties are hereby notified that the court shall consider the pleadings, and the documentary or sworn attachments thereto, in deciding any motion pressed pursuant to Fed.R.Civ.P. 12(b)(6). Any party desiring to submit any further brief or document in opposition or support of such motions must do so by February 10, 1988.

Rose app. at 772; *see* Reed app. at 80; Hill app. at 207; Kolimaga app. at 68. (The Hill, Reed and Kolimaga orders allowed the additional briefs or documents to be filed by February 26, 1988). We have previously held that when no hearing is conducted, the court's order converting Rule 12(b)(6) and Rule 12(c) motions into summary judgment motions must be unambiguous.

> [W]e believe that it is undesirable in general for a district court to enter summary judgment after receiving briefs and without holding a hearing unless it makes clear in its order that all affidavits and counter-affidavits must be filed with the briefs.... At the least, as a matter of good practice, we believe resort should not be had to [the authorization in Rule 78 for disposition of a motion without a hearing] unless it is made clear beyond all doubt that the parties must present their affidavits and counter-affidavits in addition to whatever facts appear in the

pleadings, depositions, answers to interrogatories, and admissions on file.

*Season–All Industries*, 425 F.2d at 39–40 (footnote omitted).

We examine each of the two quoted sentences in the orders to determine if the parties were sufficiently notified of the district court's intention to convert the motions to dismiss. Preliminarily, we observe that the orders refer to the district court's consideration of Rule 12(b)(6) motions rather than orders for summary judgment under Rule 56. The content of the orders does not change this focus on Rule 12(b)(6). The first sentence describes the material on which the district court would rely in ruling on the pending motions. If the described materials unambiguously constitute "matters outside the pleading" which required the district court to convert the motions then this sentence implicitly stated that the court was considering summary judgment. But "pleadings" would not require conversion and the "documentary or sworn attachments" to pleadings could consist not only of material which would require conversion such as a party's affidavit, but of such diverse materials not requiring conversion as a certificate of service, a notice of appearance, or a stipulation for the extension of time in which to file an answer. Inasmuch as this latter class of attachments would meet the description of matters to be considered by the district court, yet would not require conversion, we cannot conclude that the first sentence unambiguously notified the parties that the district court was considering summary judgment.

The second sentence described the type of submissions that the district court would accept before ruling on the pending motions. The district court referred only to the submission of "any further brief or document". A court obviously may consider legal briefs without having to convert a motion to dismiss into a motion for summary judgment. *See* 5 C. Wright & A. Miller

---

and determination of motions without oral hearing upon brief written statements of reasons in support and opposition."

None of the parties have argued that they were entitled to an opportunity for oral argu-

ment before Judge Giles entered summary judgment. Thus, we do not address the issue of whether a hearing should have been held prior to summary judgment.

§ 1366, at 682, (citing *Baltimore & O.R.R. Co. v. American Fidelity & Cas. Co.,* 34 F.R.D. 148 (W.D.Pa.1963) and *Patitucci v. United States,* 178 F.Supp. 507 (E.D.Pa. 1959)). When read in conjunction with "brief", the term "other document" may mean a memorandum of points and authorities which, similarly, does not require conversion. *See id.* Thus, we cannot conclude that this second sentence in any way clarified the ambiguity of the district court's orders.

■ Although it would be desirable in the interest of clarity for an order to notify expressly the parties that the court was converting a motion to dismiss into one of "summary judgment" or that the ruling would be pursuant to "Rule 56," the court need not be so explicit so long as the order otherwise fairly apprises the parties of the proposed conversion. Here Rose specifically requested at the August 12, 1987, hearing that the court notify him if it intended to convert the motions. Moreover, in response to the court's January 22, 1988 order, Rose filed a memorandum of law which clearly stated that he was uncertain as to whether the district court intended to convert the motions. In this instance the district court should have clarified the nature of the proceeding before granting summary judgment.

We have held that it is reversible error for a district court to convert a motion under Rule 12(b)(6) or Rule 12(c) into a motion for summary judgment unless the court provides notice of its intention to convert the motion and allows an opportunity to submit materials admissible in a summary judgment proceeding or allows a hearing. *See Castle v. Cohen,* 840 F.2d 173, 179–80 (3d Cir.1988) (vacating summary judgment when the district court converted the Rule 12(b)(6) motion without notice to the parties); *Davis Elliott Int'l, Inc. v. Pan American Container Corp.,* 705 F.2d 705, 706–08 (3d Cir.1983) (reversing summary judgment when the district court acted without notice to the parties and without an opportunity for hearing); *Crown Central Petroleum Corp. v. Waldman,* 634 F.2d 127, 129 (3d Cir.1980) (reversing summary judgment when the district court acted without notice to the parties and without allowing an opportunity to submit affidavits); *Bryson v. Brand Insulations, Inc.,* 621 F.2d 556, 559 (3d Cir. 1980) (same).

■ The failure to give adequate notice does not, however, require automatic reversal; it may be excused if the failure was a "harmless error". *See Hancock Industries v. Schaeffer,* 811 F.2d 225, 229 (3d Cir.1987). Thus, the judgment may be affirmed if it appears that there is no set of facts on which plaintiffs could possibly recover. *See id.* In *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81 (3d Cir.1987), we stated:

In reviewing orders dismissing an action pursuant to Rule 12(b),

[t]he standard by which the orders must be tested is whether taking the allegations of the complaint as true, ... and viewing them liberally giving plaintiffs the benefit of all inferences which fairly may be drawn therefrom, ... 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim which would entitle [them] to relief.'

*Wisniewski,* 812 F.2d at 83 n. 1 (quoting *Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271, 273 (3d Cir.1985) (quoting *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 444 (3d Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978))). We view the standard of review under *Hancock Industries* as identical to that for review of a dismissal under either Rule 12(b)(6) or Rule 12(c). Accordingly, we do not need to address Kolimaga's contention that the judgment in his case should be viewed as a Rule 12(b)(6) dismissal.

Our standard of review, accordingly, is plenary: we may affirm if, and only if, on the basis of the complaints filed by these plaintiffs there was no set of facts which could be proven to establish defendants' liability. Even if our precedents did not require a "harmless error" analysis, we would employ one nonetheless since counsel for the plaintiffs conceded at oral argument that affirmance would be proper if

the complaints failed to state a claim upon which relief could be granted.

## III. SECTION 1983 CLAIMS

The gravamen of the plaintiffs' section 1983 claims is that the defendants, in conspiring to bring false charges against them by corrupting the grand jury process and thereafter prosecuting these charges, violated the plaintiffs' rights to "due process, equal protection, liberty, privacy and [an] impartial criminal trial, and to be free from baseless arrest and prosecution and malicious use and abuse of process," thereby depriving the plaintiffs of their rights under the First, Fourth, Fifth, Sixth and Fourteenth Amendments. Hill Amended Complaint ¶¶ 51–52; *see also* Kolimaga Complaint ¶ 27; Rose Amended Complaint ¶¶ 53–54. The district court dismissed the plaintiffs' section 1983 claims on a variety of alternative grounds. Although Reed does not contest the district court's dismissal of her section 1983 claims, conceding that they are time barred,[5] the remaining plaintiffs maintain that their civil rights claims were improperly dismissed.

### A. *Prosecutorial Immunity*

The district court held that District Attorney Smyth and Assistant District Attorney Goodman were entitled to absolute prosecutorial immunity with respect to all of their alleged civil rights violations.[6] In its decision, the court addressed a number of alleged activities of these defendants which appeared in the various complaints, holding that Smyth and Goodman were entitled to immunity for each one. On appeal, as Smyth notes in his brief, "plaintiffs have narrowed their attack against Smyth [and Goodman] to two alleged activities: subornation of perjury and disclosure of secret grand jury information." Smyth brief at 25.

As the district court recognized, the seminal case on prosecutorial immunity is *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), where the Court utilized a "functional approach" in analyzing the immunity issue. In *Imbler*, the Court affirmed the dismissal of the plaintiff's section 1983 suit against a district attorney grounded upon, *inter alia*, the district attorney's alleged knowing use of perjured testimony. It held that prosecutors are absolutely immune from civil liability for activities "intimately associated with the judicial phase of the criminal process;" that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under section 1983." 424 U.S. at 430–31, 96 S.Ct. at 995.

The Court left open the question of whether immunity was available "for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Id.* A number of courts of appeals, including this court, have suggested that only a qualified immunity is available for such activity. *See, e.g., Mancini v. Lester*, 630 F.2d 990, 993 n. 5 (3d Cir. 1980) (citing *Helstoski v. Goldstein*, 552 F.2d 564 (3d Cir.1977) (per curiam)). Moreover, "[t]here may even be situations in which a prosecutor is found to have acted outside *any* legitimate prosecutorial role," and therefore is not entitled to absolute immunity. S. Nahmod, Civil Rights & Civil Liberties Litigation, section 7.14, at 445–46 (2d ed. 1986) (emphasis added) (citing, *inter alia, Helstoski*).

### 1. *Subornation of Perjury*

Hill and Rose allege that Smyth and Goodman "solicited and prepared perjured testimony by witnesses," Hill Amended Complaint ¶ 40(a); Rose Amended Com-

---

**5.** Reed notes in her brief:

The District Court found that Plaintiff's claims under § 1983 are barred by the Statute of Limitations. Plaintiff's suit was instituted on October 10, 1987, more than two years after she was acquitted of all charges of [*sic*] March of 1985. Plaintiff does not appeal from this portion of the judgment. . . .

Reed brief at 20 n. 6.

**6.** As earlier noted, the plaintiffs, except for Kolimaga, named Smyth and Goodman as defendants, and their complaints contain parallel allegations against the two.

plaint ¶ 41(a); that they attempted to get Rose to perjure himself in the grand jury proceedings, Hill Amended Complaint ¶¶ 40(c), 41; Rose Amended Complaint ¶¶ 41(d), 42; and that they "subjected other grand jury witnesses to similar efforts to solicit perjury in investigatory interviews and before the grand jury, and some of these witnesses actually did perjure themselves." Hill Amended Complaint ¶ 40(d); Rose Amended Complaint ¶ 41(e). According to the district court, although the plaintiffs conceded that a prosecutor is entitled to absolute immunity for the knowing *use* of perjured testimony, *see Imbler*, they contended that the procurement or solicitation of perjured testimony by coercion is distinguishable; that, at best, such activity is an investigative act.[7] The district court rejected the plaintiffs' arguments, holding that solicitation of testimony is intimately related to the judicial proceedings, and that there "is no policy reason for distinguishing between knowing use of perjury and subornation of perjury" in the immunity context. *See, e.g., Rose v. Bartle*, 692 F.Supp. at 526.[8]

As discussed above, the appropriate inquiry in determining whether immunity is available involves the role in which the prosecutor is acting—an advocacy role, or an investigative role. Although the plaintiffs, in their briefs, characterize the solicitation and coercion of perjury by the defendants as having taken place while the defendants were acting in an "investigative capacity," they proffer no adequate explanation for such a characterization. Except as to Rose, there is no elaboration in the pleadings regarding the circumstances in which the alleged solicitations of perjury took place. Tellingly, however, the plaintiffs do not dispute the district court's statement that their allegations involved the solicitation and preparation of perjured testimony "for use in the grand jury proceedings," 692 F.Supp. at 526, and in fact themselves indicate in their briefs that the defendants attempted to coerce witnesses "into committing perjury before the grand jury." Rose brief at 37; Hill brief at 34. Moreover, the more fact-specific allegations involving the solicitations of Rose to commit perjury allege that Rose was asked, or coerced, to testify perjuriously before the grand jury. Hill Amended Complaint ¶¶ 40(c), 41; Rose Amended Complaint ¶¶ 41(d), 42.

Although there may well be situations in which the allegations establish that the solicitation or coercion of false statements from a witness occurred while the prosecutor was acting in an investigative capacity, this does not appear to be one of them. The plaintiffs' allegations involve direct solicitations of testimony for use in the grand jury proceedings. Such solicitations are encompassed within "the preparation necessary to present a case" and therefore are immunized as involving the prosecutors' advocacy functions. *Myers v. Morris*, 810 F.2d 1437, 1449 (8th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). Similarly, in *Brawer v. Horowitz*, 535 F.2d 830 (3d Cir.1976), this court affirmed the district court's dismissal of a complaint alleging that "a federal prosecutor and a cooperating witness had conspired to use perjured testimony ... in order to convict appellants," *id.* at 832, reasoning that "[t]he allegations in the complaint implicating [the prosecutor] all related to actions in his role as an advocate, rather than as an administrator or investi-

---

7. The plaintiffs do not appear to dispute that a prosecutor presenting a case to a grand jury is entitled to absolute immunity. *See, e.g., Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir.1985) (per curiam); *Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir.1984) (per curiam).

8. The district court quoted the following passage from *Tate v. Grose*, 412 F.Supp. 487 (E.D. Pa.1976), in support of its holding:

 [T]here is no reason to depart from a rule of absolute prosecutorial immunity merely because the complaint alleges that defendants not only *used* perjured testimony against plaintiff but *solicited that perjury testimony as well*. To allow such an allegation to defeat the prosecutor's immunity would vitiate the *Imbler* holding. Anyone against whom perjured testimony was used could then force the prosecutor to court in a civil damage action simply by reframing the claim to allege that the perjured testimony was solicited.

 *Tate,* 412 F.Supp. at 488 (emphasis added by district court).

gator." *Id.* at 834; *see also Heidelberg v. Hammer*, 577 F.2d 429, 432 (7th Cir.1978) ("charges that the prosecutors induced witnesses to commit perjury are barred by the immunity doctrine"); *cf. Lee v. Willins*, 617 F.2d 320, 322 (2d Cir.) (allegations that prosecutor coerced perjured testimony from witnesses barred because injuries alleged by plaintiff, which stem from his multiple trials, are same injuries for which *Imbler* granted immunity), *cert. denied*, 449 U.S. 861, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980).[9]

It is true that the plaintiffs allege that the defendants engaged in "efforts to solicit perjury *in investigatory interviews* as well as before the grand jury." Hill Amended Complaint ¶ 40(d); Rose Amended Complaint ¶ 41(e) (emphasis added). The mere invocation of the catch-word "investigatory", however, cannot suffice in this case to forestall dismissal on immunity grounds. *See, e.g., Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir.1980) (interviewing witnesses before presenting their testimony to grand jury falls within prosecutor's advocacy function).

In short, although it is true that the distinction between actions taken in a quasi-judicial role and those taken in an investigative role often will involve a "gray area," *see Forsyth v. Kleindienst*, 599 F.2d 1203, 1215 (3d Cir.1979), *cert. denied*, 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981), the plaintiffs' own pleadings indicate that the alleged solicitations of perjury occurred in preparation for the grand jury proceedings, not in an investigatory capacity. Smyth and Goodman therefore are absolutely immune from liability for this alleged activity.

### 2. Disclosure of Secret Grand Jury Information

■ Hill and Rose each allege that during the course of the grand jury proceedings, Smyth and Goodman "regularly reported what transpired in the grand jury to Defendants Asher and Bartle, contrary to state law regarding the confidentiality of grand jury proceedings." *See* Rose Amended Complaint ¶ 41(b); Hill Amended Complaint ¶ 40(b).[10] The district court held that the defendants were entitled to absolute prosecutorial immunity with respect to this alleged activity because the "leak" occurred "within the context of a judicial proceeding and was for the purpose of relaying information that was actually presented to the state grand jury." *See, e.g., Rose v. Bartle*, 692 F.Supp. at 527.

The court rejected the plaintiffs' contention that this court's decision in *Helstoski v. Goldstein*, 552 F.2d at 564 (per curiam), mandated a contrary holding. *Helstoski* involved an action against a number of defendants including a United States Attorney for, *inter alia*, allegedly abusing the grand jury process and allegedly deliberately leaking false information to the press, in violation of the plaintiff's constitutional rights. The *Helstoski* court held that absolute prosecutorial immunity was inapplicable, reasoning:

Even if absolute prosecutorial immunity extends to the administrative and investigative functions of a United States Attorney, it is our opinion that certain paragraphs of Mr. Helstoski's complaint aver conduct which goes beyond the proper performance of these aspects of a prosecutor's job. We note, in particular, the several allegations of deliberate leaks by the prosecutor of false information concerning Mr. Helstoski in order to

**9.** In contrast, most of the cases cited by the plaintiffs, purportedly in support of their position, are distinguishable from the instant one in that the alleged coercion of statements did not occur in preparation for a judicial proceeding. *See, e.g., Joseph v. Patterson*, 795 F.2d 549, 555 (6th Cir.1986) (coercion of false statements later used to support a criminal complaint against plaintiff), *cert. denied*, 481 U.S. 1023, 107 S.Ct. 1910, 95 L.Ed.2d 516 (1987); *Robichaud v. Ronan*, 351 F.2d 533, 537 (9th Cir.1965) (prosecu-

tor directing police officers to intimidate a suspect into confessing).

**10.** Rose alleges that "[i]n August, 1983, for example, during the ongoing grand jury investigation, Defendant Bartle told plaintiff that he would be fired based upon statements appearing in notes of the grand jury testimony that had been provided to him by Defendants Smyth and Goodman." Rose Amended Complaint ¶ 41(b).

damage his political prospects. It would appear that such activity, if it occurred would lie outside of the rationale for absolute immunity set forth in *Imbler*. At most, it would be subject to a qualified good-faith immunity.

*Id.* at 566.

The district court distinguished *Helstoski* on two grounds. It stated that in *Helstoski*, the leaks "necessarily occurred outside of any judicial proceeding," whereas here, the leaks occurred "within the context of a judicial proceeding" and thus fell within the *Imbler* standard. The district court further indicated that *Helstoski* was not controlling because in *Helstoski* the leaked information was allegedly false, whereas here, the plaintiffs merely alleged that defendants leaked "accurate information." *See, e.g., Rose v. Bartle*, 692 F.Supp. at 527. On appeal, the essential dispute between the parties involves whether or not *Helstoski* mandates reversal of the district court's holding on this issue.

To the extent that the district court's grant of immunity was premised upon the bare fact that the leaks involved here occurred during the course of a grand jury proceeding, its analysis is erroneous. For instance, in *Powers v. Coe*, 728 F.2d 97, 103 (2d Cir.1984), the court held that a prosecutor was not absolutely immune for leaking secret information *from the grand jury investigation* to the media, reasoning that "[t]o the degree that a prosecutor is called upon as part of his official duties to deal with the press, it would appear beyond cavil that such a duty would be administrative rather than 'quasi judicial,' and hence not deserving of the cloak of absolute immunity." Moreover, we agree with the plaintiffs that the court erred in reasoning that because the leaked information in this case was "accurate," the defendants were entitled to immunity. The accuracy of the information disclosed is irrelevant in an inquiry as to whether the defendants' alleged activities were "intimately associated with the judicial phase of the criminal process" under *Imbler*.

Smyth correctly recognizes that a court must employ a "functional analysis" test in determining whether immunity is available, *see Mancini*, 630 F.2d at 992; that the critical issue for immunity purposes is whether a prosecutor is acting within his "quasi-judicial" role or his administrative/investigative role. However, neither Smyth, the other parties, nor the district court seem to have actually *applied* such a "functional analysis" in considering this issue. The relevant inquiry here is whether Smyth and Goodman, when they allegedly reported what was happening in the grand jury proceedings to Asher, the Chairman of the Montgomery County Republican Party, and Bartle, the Chairman of the County Commission, were acting in a quasi-judicial capacity, an administrative/investigative capacity, or totally outside *any* prosecutorial authority. Viewing the issue in this light, *Helstoski* is not particularly helpful; there, the prosecutor disseminated information to the press, whereas here, the information was disseminated to various co-defendants.

Based upon the pleadings as they stand, we believe that the district court erred in holding that prosecutorial immunity was available as a matter of law; there simply is not enough information in the pleadings to have enabled it—or to enable us—to determine what "role" the defendants were acting in when they relayed the relevant information to Bartle and Asher. There is no indication, for instance, that the information was relayed in the course of "routine meetings dedicated to the preparation and prosecution of the case," *Weg v. Macchiarola*, 654 F.Supp. 1189, 1194 (S.D.N.Y. 1987) (immunity available for allegation that prosecutor discussed criminal case against plaintiffs with co-defendants who were not prosecutor's fellow employees, because discussions took place during case preparation meetings). In fact, it is possible that the leaking of information to Bartle and Asher was totally unrelated to Smyth and Goodmans' prosecutorial roles and exceeded the scope of their prosecutorial authority.[11]

---

11. Goodman urges that we affirm the dismissal

on the ground that the plaintiffs have failed to

Smyth maintains, however, that even if absolute immunity is unavailable for the alleged disclosures, such conduct is insufficient to state a claim under section 1983, and that therefore, this claim against both prosecutors must be dismissed. We agree.

As noted earlier, Hill and Rose allege in their respective complaints that the disclosures were violative of *state* law. "It is axiomatic that violations of state law alone are insufficient to state a claim for section 1983 relief." *Powers,* 728 F.2d at 105 (citing *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)). In their briefs, the plaintiffs do not argue that these disclosures also are independently actionable under section 1983, and at oral argument, counsel for Rose who argued, in effect, for all of the plaintiffs, stated that whether the disclosures constituted a civil rights violation was "not relevant to our claim." Hill did not disassociate himself from this statement. Instead, the plaintiffs assert that the disclosures establish a link in the conspiracy among the defendants to violate the plaintiffs' civil rights; in essence, that the disclosures, although they themselves are not claimed to have impinged any constitutional right, can be used as a bootstrap to render these defendants liable for conspiracy to maliciously prosecute.

We disagree. Smyth and Goodman are absolutely immune from liability for the damages resulting from the malicious prosecution. *See Imbler.* Engaging in an illegal conspiracy does not affect this immunity. The plaintiffs have not demonstrated that the illegal conspiracy, independent of the malicious prosecution, deprived them of any rights or resulted in any damage. The injury claimed by the plaintiffs resulted from the malicious prosecution, for which the prosecutors are absolutely immune. The plaintiffs have failed to claim a redressable injury.

We therefore affirm the district court's dismissal of all the plaintiffs' claims against Smyth and Goodman.[12]

## B. *Statute of Limitations*

The district court held that the section 1983 claims of each plaintiff were barred by the statute of limitations. The court first reasoned, and none of the parties dispute, that the applicable limitations period was two years.[13] The court went on to

allege "detailed facts supporting any contention that absolute immunity does not apply;" in essence, that the plaintiffs should have pleaded facts establishing that the disclosures were not made in the defendants' quasi-judicial role. Goodman brief at 20. At least one court has held that a plaintiff must plead " 'detailed facts supporting the contention that the plea of immunity cannot be sustained,' " *Morrison,* 761 F.2d at 245 (citation omitted). Here, however, the plaintiffs did plead specific facts; moreover, the context in which these disclosures were made could well involve knowledge peculiarly within defendants' control.

**12.** As noted earlier, the plaintiffs do not discuss the district court's holding that the defendants were immunized for the following alleged activities:

(1) instituting grand jury proceedings without investigation and without a good faith belief that any wrongdoing had occurred;

(2) influencing and directing the grand jury to present false findings;

(3) intentionally failing to call witnesses with knowledge of the events who they believed would exculpate Rose; and

(4) acting pursuant to the instructions of other defendants under threats and enticements.

The first three activities clearly are encompassed by the immunity doctrine as "intimately associated with the judicial phase of the criminal process." The last alleged "activity," as the district court noted, is inapposite because defendants' motives are irrelevant to the immunity determination. *See, e.g., Jennings v. Shuman,* 567 F.2d 1213, 1221–22 (3d Cir.1977).

While we do not treat the allegations regarding disclosure of grand jury information as discrete claims we point out that they might in any event be barred by the statute of limitations.

**13.** As the district court recognized, in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court held that in section 1983 suits, the court must select the one most appropriate state statute of limitations for all section 1983 claims. *See also Owens v. Okure,* — U.S. ——, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). This court has held that Pennsylvania's two-year limitations period for personal injury actions is applicable in section 1983 actions. *See Bartholomew v. Fischl,* 782 F.2d 1148, 1155 (3d Cir.1986); *Knoll v. Springfield Township School District,* 763 F.2d 584, 585 (3d Cir.1985).

explain that federal law determines the date of accrual of a section 1983 cause of action, and that the applicable federal law provides that such a cause of action accrues when the plaintiff "knew or had reason to know of the injury that constitutes the basis of [the] action." 692 F.Supp. at 528; *see Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir.1982) (per curiam). The court concluded that all the plaintiffs knew or had reason to know of the injuries constituting the bases of their section 1983 actions more than two years before his or her complaint was filed. *See, e.g.*, 692 F.Supp. at 528–31.

As noted earlier, Reed concedes that her section 1983 claims are time barred. The remaining plaintiffs contend that the district court's holding is erroneous.

### 1. *Malicious Prosecution*

■ Hill, Kolimaga and Rose strenuously argue that the district court erred in dismissing their section 1983 malicious prosecution claims as time-barred. They maintain that under the weight of judicial authority, the statute of limitations for a section 1983 malicious prosecution claim does not begin to run until the underlying criminal proceedings are terminated in the plaintiff's favor. They maintain that law, logic and policy dictate that a similar analysis be adopted in this case, and maintain that if it is, their respective section 1983 malicious prosecution claims were timely filed.

The district court recognized that in *Deary v. Three Un-named Police Officers*, 746 F.2d 185 (3d Cir.1984), this court stated in a footnote that the plaintiff's section 1983 claim for malicious prosecution, in the event that her allegations stated such a claim, would have accrued on "the date that the criminal proceedings were resolved

in [her] favor." *Id.* at 197 n. 16. The district court, however, rejected the plaintiffs' reliance upon *Deary*, characterizing this footnote as dictum and therefore not controlling. The district court went on to state that a section 1983 cause of action is not made out simply by asserting that a common-law tort was committed. It reasoned that it was not bound by the elements of the state common law tort in determining when the section 1983 cause of action accrued, but rather was required to examine when the plaintiffs knew or had reason to know of the underlying injury. Citing and quoting *Edwards v. Sotomayor*, 557 F.Supp. 209, 217 (D.P.R.1983), the court reiterated that "once the violation of a claimant's federal constitutional rights is apparent, the federal cause of action accrues and there is no need to adopt a state accrual standard immersed in state requirements for a tort of malicious prosecution." *See, e.g., Rose v. Bartle*, 692 F.Supp. at 529 (emphasis omitted). The court concluded that each of the plaintiffs' section 1983 malicious prosecution claims was time-barred under the applicable legal standard.[14]

Although the defendants, in their briefs, maintain that there is a "split in authority" with respect to when a section 1983 malicious prosecution claim accrues, Montgomery County and Bartle brief at 40, the cases that the parties have cited indicate that the weight of appellate court authority holds that under federal law, such claims do not accrue until the underlying criminal proceedings are terminated in the plaintiff's favor. *See, e.g., McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir.1988); *Venegas v. Wagner*, 704 F.2d 1144, 1146 (9th Cir.1983); *Singleton v. City of New York*, 632 F.2d 185, 198 (2d Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67

**14.** Based upon the allegations in the plaintiffs' complaints, the district court held that Hill's section 1983 malicious prosecution claim accrued in October 1984, when his case was held over for trial after a preliminary hearing; that Rose's section 1983 malicious prosecution claim accrued in March 1984, when, according to the court, the criminal complaint was filed against him; and that Kolimaga's section 1983 malicious prosecution claim accrued "at the time

that the charges were brought against the plaintiff, which was in August of 1983." (Kolimaga asserts in his brief that although he was fired in August 1983, charges were not brought against him until some time after the grand jury presentment recommending criminal prosecution was filed in November 1983.) Kolimaga brief at 4. Each plaintiff filed his complaint more than two years after the date on which the district court found his claim to have accrued.

L.Ed.2d 347 (1981); *cf. Morrison v. Jones,* 551 F.2d 939, 940–41 (4th Cir.1977) (applying "favorable termination" rule without expressly acknowledging that the rule is a federal one). Most of the cases cited by the defendants in support of a contrary holding either involve section 1983 claims other than those for malicious prosecution, *see, e.g., Strung v. Anderson,* 452 F.2d 632 (9th Cir.1971) (search and seizure); *Gowin v. Altmiller,* 663 F.2d 820, 822 (9th Cir. 1981) (section 1983 claim appears to involve only false arrest); *Rinehart v. Locke,* 454 F.2d 313 (7th Cir.1971) (holding arguably encompasses only section 1983 claims for false arrest), or, at best, support the defendants' position without extended discussion. *See, e.g., Walden III, Inc. v. State of Rhode Island,* 576 F.2d 945, 947 n. 5 (1st Cir.1978).

More importantly, this court has expressly held that "the elements of liability for the constitutional tort of malicious prosecution under section 1983 coincide with those of the common law tort." *Lee v. Mihalich,* 847 F.2d 66, 70 (3d Cir.1988). We stated in *Lee:*

> A civil action for § 1983 malicious prosecution requires that: (1) the defendant initiate a criminal proceeding; (2) *which ends in plaintiff's favor;* (3) which was initiated without probable cause; and (4) the defendant acts maliciously or for a purpose other than bringing the defendant [sic] to justice. We have held that a claim for malicious prosecution is actionable under 42 U.S.C.A. § 1983 (citations omitted). Under these authorities, *the section 1983 claim must include the elements of the common law tort as it has developed.*

*Id.* at 69–70 (citations and footnotes omitted; emphasis added). The problem with the district court's analysis is that it fails to accommodate to the law in this circuit, that favorable termination is an element of the constitutional tort. As discussed above, the district court was of the opinion that because a section 1983 claim is not made out by simply asserting the commis-

sion of a common law tort—that section 1983 constitutional claims are distinguishable from state tort claims—it was not bound by the elements of the common law tort of malicious prosecution in determining when the plaintiffs' cause of action accrued. It is true that under certain circumstances the "overlap between state common-law tort actions and federal civil rights actions brought pursuant to the provisions of 42 U.S.C. section 1983" is "undefined." *McCune,* 842 F.2d at 907 (Guy, J., concurring). However, that is not the case here; this court has expressly adopted the "favorable termination" element of the common law tort of malicious prosecution as an element of a parallel section 1983 action.

The plaintiffs maintain that because favorable termination was a necessary element of their section 1983 claim, they neither knew nor had reason to know of the injury that constituted the basis of their actions until such termination, and that, accordingly, their section 1983 actions did not accrue under federal law until such termination. We agree. Because favorable termination is a necessary element of the relevant section 1983 claim in this circuit, a holding that such termination need not have occurred for a plaintiff to be cognizable of his constitutional injury cannot be justified. *See McCune,* 842 F.2d at 907–09 (Guy, J., concurring). Had this court limited the elements of a section 1983 malicious prosecution claim to the initiation of criminal proceedings without probable cause for malicious purposes, then perhaps the holding of the district court that the plaintiffs had reason to know of their constitutional injuries before the criminal proceedings were terminated in their favor would be sustainable. As the law in this circuit stands, however, it is not.

A review of the parties' complaints reveals that both Kolimaga and Rose filed their complaints less than two years after the dates they allege that the underlying criminal proceedings were terminated in their favor.[15] Accordingly, their section

---

**15.** Kolimaga filed his complaint on February 12, 1987. According to his complaint, the un-

derlying proceedings terminated in his favor on February 14, 1985, when all charges against him

1983 malicious prosecution claims were improperly dismissed. It is unclear from the allegations in Hill's complaint, which was filed on November 28, 1986, exactly when the criminal proceedings were terminated in his favor; he alleges only that on October 9, 1984 his case was held over for trial after a preliminary hearing, and that he was "completely cleared of each and every one of the charges that were held over for trial.". Hill Amended Complaint ¶¶ 21–22. Since it is not apparent from the face of Hill's complaint that Hill's section 1983 malicious prosecution claim is time-barred, this claim likewise was improperly dismissed.[16]

### 2. *False Arrest and Abuse of Process*

 Hill, Rose and Kolimaga further assert that their section 1983 claims for false arrest and abuse of process likewise are not time barred.[17] The district court held that Rose's claims for false arrest and abuse of process accrued in March 1984, when he was charged with criminal activity. *Rose v. Bartle*, 692 F.Supp. at 529. It held that Kolimaga's claims for false arrest and abuse of process accrued in August 1983 based upon his allegation that he was "fired from his job on or about August 11, 1983 because of the false charges which defendants conspired to lodge and pursue against him." *Kolimaga v. Bartle*, slip op. at 6 (citing Kolimaga Complaint ¶ 25). The

court held that Hill's claims for false arrest and abuse of process accrued "[a]t the very latest . . . when the matter was held over for trial in October of 1984." *Hill v. Bartle*, slip op. at 14–15.

Notwithstanding their reliance upon *Deary* for the proposition that their malicious prosecution claims are not time barred, the plaintiffs ignore the *Deary* court's statement that a section 1983 claim for false arrest accrues on the date of the arrest, as does a section 1983 claim for abuse of process, because on that date a plaintiff "would have reason to know of the injury which those two torts encompass." *Deary*, 746 F.2d at 197 n. 16. Even if we were inclined to do so, it would be difficult to dismiss this portion of the *Deary* court's analysis as mere dictum.[18] Moreover, the plaintiffs conceded at oral argument that the weight of authority is consonant with *Deary*.

The plaintiffs, however, point to *Cameron v. Fogarty*, 806 F.2d 380 (2d Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987), in which the United States Court of Appeals for the Second Circuit held that because, under common law principles, an action for false arrest cannot be maintained if the arrest was followed by a conviction, conviction is a complete defense to a section 1983 action

---

were nolle prossed and/or dismissed. Kolimaga Complaint ¶¶ 13, 24.

Rose filed his original complaint on October 27, 1986. He alleges in his amended complaint that the criminal proceedings terminated in his favor in early December 1984, when his counsel was notified that the case against him would not be prosecuted, or in February or March 1985, when the charges against him apparently were formally dismissed. Rose Amended Complaint ¶ 23.

**16.** *See, e.g., Bethel v. Jendoco Const. Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978) (if time bar not apparent on face of complaint, it may not afford the basis for a dismissal).

**17.** In contrast to a section 1983 claim for malicious prosecution, a section 1983 claim for malicious abuse of process lies where "prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law." *Jennings v. Shuman,* 567 F.2d 1213, 1217 (3d Cir.1977).

**18.** In *Deary,* the plaintiff brought a number of common law and section 1983 claims against various defendants, including five police officers. Her section 1983 claims against the officers included charges of false arrest, malicious prosecution, and abuse of process. The *Deary* court noted that although a statute of limitations defense had not been raised in the district court, one officer had raised the issue in his brief on appeal and the other four had addressed it at oral argument. The *Deary* court stated that it accordingly would "underscore . . . the relevant principles bearing on the statute of limitations issue." 746 F.2d at 196. The court then discussed the applicable limitations period, as well as the accrual issue. *Id.* at 196–99. It concluded that because the question of whether the plaintiff's section 1983 claims were time barred hinged upon whether defendants had adequate notice of her original complaint, a factual question, the case had to be remanded.

for false arrest. *Id.* at 387–89. Although *Cameron* did not address the issue of accrual, the plaintiffs maintain that if conviction is a complete defense to a section 1983 false arrest action, such an action, like a section 1983 malicious prosecution action, cannot be deemed to have accrued until the plaintiff is acquitted.[19]

Although the plaintiffs' argument has some force, it appears that *this* court has never indicated that favorable termination is a requisite element of a section 1983 false arrest claim, but rather has suggested to the contrary. *See, e.g., Patzig v. O'Neil,* 577 F.2d 841, 848 (3d Cir.1978) ("[c]learly, an arrest without probable cause is a constitutional violation actionable under section 1983."). Moreover, although *Cameron* has been followed by a number of courts, at least one court, in a decision issued before *Cameron,* expressed some doubt as to the rule there adopted. *See Brown v. Edwards,* 721 F.2d 1442, 1448–49 n. 8 (5th Cir.1984) ("[w]hile the common law rule was clear that an outstanding conviction barred an action for malicious prosecution respecting the same charge … it appears considerably less plain that such a conviction had the same effect on an action for false arrest.").

Furthermore, whatever the prevailing common law rule, we have some doubts as to the policy determinations underlying *Cameron.* The *Cameron* court reasoned that if a conviction is obtained, the arrest without probable cause is simply "premature" and that the resultant injury accordingly is "insubstantial," and that the exclusionary rule is a sufficient deterrent to arrests lacking probable cause. 806 F.2d at 388. It concluded that its holding reflected the "proper accommodation between the individual's interest in preventing unwarranted intrusion into his liberty and society's interest in encouraging the apprehension of criminals." *Id.* at 388. We have some misgivings as to this accommodation, especially in light of the availability of qualified immunity as a defense.

We also point out that the reference to the conviction rendering the damage "insubstantial" supports the concept that the conviction is a defense in the civil action to be established by the defendant and thus is distinguishable from proof of termination of the criminal action in the plaintiff's favor in a malicious prosecution case which is an element of the claim which the plaintiff must establish. On such an analysis the false arrest claim would accrue at the time of the arrest. We add, however, that our conclusion is not dependent on this distinction. In short, we reaffirm the *Deary* court's analysis of accrual and hold that the plaintiffs' section 1983 false arrest claims accrued on the dates they were arrested.

*Cameron* is not relevant with respect to the plaintiffs' claims for abuse of process. As one court has noted, "[at] common law, a civil damage suit for abuse of process is not necessarily barred merely because the criminal (or other) proceeding involving the allegedly abused process has not terminated favorably to the damage suit plaintiff." *Brown,* 721 F.2d at 1449 n. 8 (citations omitted). Here, as in *Deary,* the plaintiffs' claims for abuse of process accrued on the dates of arrest because the plaintiffs would have had reason to know on those dates of the injuries which the tort encompasses.

Although none of the plaintiffs' amended complaints reveal the dates on which the alleged arrests took place, it is apparent from other dates set forth in the complaints that they could not have taken place less than two years before each complaint was filed.[20] Accordingly, the plaintiffs' re-

---

**19.** In a case decided prior to *Cameron,* however, the same court held that a section 1983 claim for false arrest accrued on the date of arrest, because the plaintiff had reason to know of her injury on that date. *See Singleton,* 632 F.2d at 191.

**20.** Specifically, both Rose and Hill allege that on October 9, 1984—more than two years before their original complaints were filed—their cases were held over for trial after a preliminary hearing. Rose Amended Complaint ¶ 22; Hill Amended Complaint, ¶ 21. Rose and Hill do not suggest that the arrests were not made before that date. Similarly, Kolimaga alleges that all of the criminal charges against him were nolle prossed and/or dismissed "by on or about February 14, 1985," almost exactly two years before his complaint was filed on February 12,

spective section 1983 false arrest and abuse of process claims were properly dismissed.

### 3. *Conspiracy Claims*

■ The district court held that the plaintiffs' section 1983 conspiracy to prosecute maliciously claims were time-barred because they had reason to know of any ongoing conspiracy to violate their civil rights more than two years before their respective complaints were filed. The court noted that under *Sandutch v. Muroski*, 684 F.2d at 252, courts must distinguish between continuing unlawful acts and continuing effects from the original violation for the purposes of accrual, *see id.* at 254. It held that the plaintiffs had reason to know of any unlawful acts constituting a conspiracy more than two years before their complaints were filed.[21]

However, at least one court has suggested that a section 1983 claim for conspiracy to prosecute maliciously cannot accrue until termination of the proceedings in the plaintiffs' favor. *See Venegas v. Wagner*, 704 F.2d at 1146. This analysis has some force; if the plaintiffs' malicious prosecution claims did not accrue until favorable termination, it is difficult to see how a cause of action for conspiracy to prosecute maliciously could have accrued before that date. The district court's dismissal of the plaintiffs' claims alleging conspiracy maliciously to prosecute therefore was improper.

### C. *Probable Cause*

■ The district court held that the grand jury presentment and the findings of Judge Stefan, the supervising judge at the grand jury proceedings, constituted superseding intervening causes of Rose and Hills' alleged injuries grounded upon their section 1983 malicious prosecution claims as well as their state malicious prosecution claims, and that those claims therefore must be dismissed.[22] 692 F.Supp. at 531–32. He did not, however, make this finding with respect to Kolimaga's claim.

As discussed earlier, one of the elements of a section 1983 malicious prosecution action is the initiation of criminal proceedings against the plaintiff without probable cause. *Lee*, 847 F.2d at 69. The district court acknowledged that "a grand jury indictment or presentment does not suffice as evidence of probable cause for purposes of a malicious prosecution action where the indictment or presentment was procured by fraud, perjury or other corrupt means." *See, e.g., Rose v. Bartle*, 692 F.Supp. at 531 (citing *Crow v. United States*, 634 F.Supp. 1085, 1092 (D.Kan.1986); *Bussard v. Neil*, 616 F.Supp. 854, 857 n. 2 (M.D.Pa.1985)). It stated, however, that "against the presumption of grand jury regularity ... plaintiff[s] [have] failed to show any evidence that the presentment was based upon something other than testimony or other evidence which witnesses believed to be true at the time the information was presented to the grand jury." *Id.* (citation omitted).

The court reasoned that the plaintiffs' allegations that the defendants "influenced and directed the grand jury ... to present false findings ..." and "maliciously corrupted and perverted" the grand jury investigation "to result in a baseless presentment," that they solicited perjury from witnesses and some witnesses actually did perjure themselves, and that the judge who approved the presentment either did not

1987. Kolimaga Complaint ¶ 24. He thus does not deny that the arrests were more than two years before his complaint was filed.

Moreover, at oral argument the plaintiffs conceded that if their section 1983 claims for false arrest accrued on the dates of arrest, the claims are time-barred.

**21.** The court held that Hill's conspiracy claim accrued when the matter was held over for trial in October 1984; that Rose's claim accrued when criminal charges were filed against him in March 1984; and that Kolimaga's claim accrued

when charges were brought against him in August 1983.

**22.** The district court rendered a similar holding in Reed's case; however, as noted earlier, Reed concedes that her section 1983 claims are time barred. We are not certain why the district court did not address this issue in Kolimaga's case, dismissing his section 1983 claims solely on the basis of the statute of limitations. It may have been because he did not have an opportunity to file an amended complaint.

know of the alleged improprieties or was himself part of the conspiracy, were conclusory, and insufficient to survive the defendants' motions to dismiss. The court further pointed out that although the plaintiffs alleged that the defendants asked Rose to perjure himself in front of the grand jury, they further alleged that Rose did not in fact perjure himself. The court indicated that these allegations therefore did not suffice to establish that the grand jury proceedings had been corrupted.

The court stated:

Pleading requirements for complaints arising under civil rights statutes must be stated with greater particularity than is generally required under the liberal federal pleading rules in order to prevent frivolous civil rights suits. 'Vague and conclusory allegations in a civil rights complaint will not survive a motion to dismiss' (citation omitted). These allegations do not meet this raised standard of pleading.

692 F.Supp. at 532.[23]

The plaintiffs do not seriously dispute that in a section 1983 malicious prosecution action, as in a common law action for malicious prosecution, a grand jury indictment or presentment constitutes prima facie evidence of probable cause to prosecute, but that this prima facie evidence may be rebutted by evidence that the presentment was procured by fraud, perjury or other corrupt means. *See, e.g., White v. Frank,* 855 F.2d 956, 961–62 (2d Cir.1988); *cf. Martinez v. E.J. Korvette, Inc.,* 477 F.2d 1014, 1016 (3d Cir.1973) (applying Pennsylvania law). The plaintiffs strenuously maintain, however, that the district court erred in holding that the plaintiffs' allegations were insufficient to overcome the presumption of grand jury regularity.

As the district court noted, this court has held that complaints under civil rights statutes must plead facts with greater specificity than is generally required. *See, e.g., Colburn v. Upper Darby Tp.,* 838 F.2d 663, 666 (3d Cir.1988); *District Council 47, American Federation of State, County and Municipal Employees v. Bradley,* 795 F.2d 310, 313 (3d Cir.1986). This heightened specificity requirement is grounded upon "[t]he dual policy concerns of protecting state officials from a deluge of frivolous claims and providing state officials with sufficient notice of the claims asserted to enable preparation of responsive pleadings...." *Colburn,* 838 F.2d at 666. We have further stated:

[t]he heightened specificity requirement for section 1983 claims does not alter the general standard for ruling on motions to dismiss under Rule 12(b)(6).... '[T]he crucial questions are whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer'. *Id.* (citations omitted).

Despite the plaintiffs' protestations of error, we agree with the district court that the plaintiffs' allegations are insufficient to survive dismissal. Although the allegations are quite specific with respect to the defendants' attempts to solicit perjury from Rose, as the district court noted, the plaintiffs further allege that Rose testified truthfully, thus, these allegations do not serve to establish that the presentment was improperly procured. Otherwise, the plaintiffs never identify which witnesses perjured themselves, or the substance of the allegedly perjured testimony.[24] In view of the fact that the presentment detailed the testimony of the various grand jury wit-

---

**23.** The court went on to state that although the presentment, issued after the jury heard testimony of over 100 witnesses, found probable cause to support the arrest of the defendants, "there is no affidavit evidence from plaintiff[s] or other persons that any other witness was encouraged or coerced by defendants to testify perjuriously before the grand jury and did so, in fact." *See, e.g., Rose v. Bartle,* 692 F.Supp. at 532. As we earlier explained, however, we may affirm the judgment of the district court only if dismissal on the pleadings is warranted; thus, the adequacy of the plaintiffs' affidavit evidence is not a relevant concern.

**24.** Similarly, although Rose alleges that the defendants intentionally failed to call witnesses who would have provided exculpatory evidence, Rose Amended Complaint, ¶ 41(c), he never identifies these witnesses or sets forth the substance of their testimony.

nesses, we are inclined to agree with the district court's assessment of the sufficiency of the complaints. *See Heidelberg v. Hammer*, 577 F.2d 429, 432 (7th Cir.1978); *Henderson v. Cardwell*, 426 F.2d 150, 152–53 (6th Cir.1970); *Hauptmann v. Wilentz*, 570 F.Supp. 351, 388–89 (D.N.J.1983), *affd*, 770 F.2d 1070 (3d Cir.1985), *cert. denied*, 474 U.S. 1103, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986).

The plaintiffs note that they allege, not only that Smyth and Goodman solicited and presented perjured testimony, but, additionally or alternatively, that these defendants falsified the presentment and influenced the grand jury to implicate the plaintiffs, presumably notwithstanding exculpatory evidence. They maintain that because they could not determine who actually committed perjury during the proceedings, and who testified truthfully but had their testimony subsequently falsified, they were unable to plead with more specificity. However, we believe that the better course would have been for the plaintiffs to point to specific portions of the testimony as set forth in the presentment which they claim is false, alleging either that the witness perjured himself or herself or that his or her truthful testimony was subsequently altered.

In short, absent more specific allegations as to who lied at the grand jury proceedings and what they lied about, or, alternatively, as to what portions of the presentment were falsified, we are unable to conclude that the plaintiffs' allegations that the presentment was procured through fraud or perjury are sufficiently specific, in light of the fact that the presentment spe-cifically sets forth the names of the various witnesses and the scope of their testimony. Moreover, because the presentment is so specific, we reject the plaintiffs' contention that discovery is required in order for them to amend their pleadings.[25]

■ Although we agree with the district court's determination that Rose and Hills' allegations are insufficient insofar as they relate to the contention that the presentment was procured by fraud, perjury or other corrupt means, we believe that these plaintiffs should be afforded the opportunity to seek to amend their complaints to achieve the requisite specificity. "[T]his court has consistently held that when an individual has filed a complaint under section 1983 which is dismissable for lack of specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint...." *Darr v. Wolfe*, 767 F.2d 79, 81 (3d Cir.1985). Although both Hill and Rose already have amended their original complaints once, we do not believe that they are thereby automatically precluded from seeking to amend their complaints a second time in accordance with our analysis here, in light of the liberal amendment policy underlying Fed.R. Civ.P. 15(a).[26] *See Frazier v. Southeastern Pennsylvania Transp. Auth.*, 785 F.2d 65, 70 n. 6 (3d Cir.1986) (where the plaintiffs had twice amended the complaint on their own initiative, and where district court thereafter directed them to amend complaint once again to allege more facts or face dismissal, district court did not err in dismissing third amended complaint).

Accordingly, we will vacate the district court's order dismissing Rose and Hills'

**25.** The district court also held that because the plaintiffs' own complaints established "beyond question" that there was probable cause to initiate the grand jury investigation, their malicious prosecution claims must fail. We find this analysis flawed. As we read the complaints, the plaintiffs do not allege that the investigation of macing in the Sheriff's Department was uncalled for, but rather that the presentment implicating them *particularly* was fraudulently procured, and that probable cause to initiate criminal proceedings against them therefore was lacking.

**26.** As we understand it, the district court indicated that Rose's complaint was not sufficiently specific, but it seems to have sought increased specificity only with respect to the allegations that the defendants attempted to solicit perjury from Rose, which specificity the plaintiffs then proceeded to provide. Thus, the plaintiffs' counsel might have been unaware of the deficiencies in their complaints with respect to witnesses other than Rose when they first amended them. *Cf. Denny v. Barber*, 576 F.2d 465, 471 (2d Cir.1978) (where counsel *was* put on plain notice of deficiencies in complaint and failed to correct those deficiencies, district court's refusal to permit second amendment was warranted).

malicious prosecution claims, and remand to the district court to consider motions to amend by these plaintiffs.[27] Kolimaga, of course, may seek to amend his complaint as well.

## IV. RICO CLAIMS [28]

The plaintiffs' complaints also alleged that Asher, Bartle, the party, and the county violated various provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.[29] Specifically, they claimed that these defendants violated RICO section 1962(a)[30]—Rose Amended Complaint ¶ 63; Hill Amended Complaint ¶ 61; Reed Amended Complaint ¶ 66; that Asher, Bartle, and the party violated RICO section 1962(c)—Rose Amended Complaint ¶ 60, 61; Hill Amended Complaint ¶ 58, 59; Reed Amended Complaint ¶ 63, 64; Kolimaga Complaint ¶ 31;[31] and that Asher, Bartle, and the party violated RICO section 1962(d) —Rose Amended Complaint ¶ 62; Hill Amended Complaint ¶ 60; Reed Amended Complaint ¶ 65; Kolimaga Complaint ¶ 32. The plaintiffs also alleged the injury required by RICO section 1964(c)—Rose Amended Complaint ¶ 64; Hill Amended Complaint ¶ 62; Reed Amended Complaint ¶ 67; Kolimaga Complaint ¶ 33.[32]

Although the district court indicated in both *Rose* and in its unpublished opinions that it was treating the defendants' motions to dismiss under Rule 12(b)(6) as motions for summary judgment, the language it employed suggests that its decisions on the RICO claims were based on the plaintiffs' failure to state claims sufficient under Rule 12(b)(6). *See Formax, Inc. v. Hostert*, 841 F.2d 388, 389 (Fed.Cir.1988). In any event, for the reasons we have already set forth we will review the RICO dismissals under the Rule 12(b)(6) standard.

This standard of review does not distinguish between RICO and non-RICO claims. "Under the modern federal rules [of civil procedure], it is enough that a complaint put the defendant on notice of the claims against him. It is the function of discovery to fill in the details, and of trial to establish fully each element of the cause of action." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 790 (3d Cir. 1984) (reversing district court's dismissal of RICO count), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78

---

**27.** *See Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 662 (7th Cir.1978) (on appeal of district court's dismissal of complaint, appellate court can grant leave to amend or remand to district court to consider the motion), *cert. denied*, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979); *Denny*, 576 F.2d at 471 (appellate court, if so advised, can grant leave to amend, remand to district court to allow amendment, or affirm dismissal without prejudice to the district court's entertaining an application to amend).

**28.** Although the district court ostensibly dismissed as insufficient what it termed RICO allegations against Smyth, Goodman, and Vance, regarding them as re-alleged from the 42 U.S.C. § 1983 portion of the complaint, Rose states that he "did not seek to bring any RICO claims against these defendants," and thus "he does not appeal from this portion of the judgment." Rose brief at 38 n. 35. Reed and Hill adopted the portion of Rose's brief incorporating this reference under Fed.R.App.P. 28(i). *See* Reed brief at 24–25; Hill brief at 35. Reed nevertheless asserts that she states a cause of action against Smyth and Goodman under RICO. Reed brief at 20 n. 6, 25. We are satisfied, however, that while her amended complaint does mention Smyth and Goodman in the RICO

count it cannot be construed as even attempting to assert a RICO cause of action against them and if it was so construed it would fail to state the claim adequately to survive a motion to dismiss.

**29.** Except with regard to Kolimaga, the RICO portions of appellants' complaints, as well as the district court's analyses of them, are substantially similar.

**30.** Kolimaga did not assert any RICO section 1962(a) claim in his complaint.

**31.** Kolimaga did not allege a RICO section 1962(c) violation against the Party.

**32.** There is no indication in the record that the parties or the district court addressed the issues of the four-year RICO statute of limitations, or the accrual of injury thereunder. Given the time frame encompassing the racketeering activity allegations, the complaints do not appear to be deficient in regard to these questions. *See Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987); *Keystone Ins. Co. v. Houghton*, 863 F.2d 1125 (3d Cir.1988).

S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Hurst v. Sears, Roebuck & Co.*, 613 F.Supp. 1210, 1211 (W.D.Pa.1985); Fed.R.Civ.P. 8(a), (f).

In rejecting an attempt to limit the applicability of RICO in regard to civil actions, the Supreme Court has indicated that "RICO is to be read broadly," especially given "Congress'[s] ... express admonition that RICO is to 'be liberally construed to effectuate its remedial purposes'.... [which] are nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497–98, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985) (quoting Pub.L. 91–452, section 904(a), 84 Stat. 947). *See also Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1348 (3d Cir.1989) ("[W]e are not free to read additional limits into RICO once a plaintiff has made out all of the elements required for a finding of liability under the statute's explicit provisions."). Thus, the suggestion that "[a] charge of racketeering, with its implications of links to organized crime, should not be easier to make than accusations of fraud" appears unwarranted. *Saine v. A.I.A., Inc.*, 582 F.Supp. 1299, 1306 n. 5 (D.Colo.1984).[33]

Although there are elements common to all the RICO sections upon which the plaintiffs' claims are founded, we shall address them in the same order as the district court, keeping in mind that "complaint[s] ... [need] not state every element necessary for recovery with precision." *Ambling v. Blackstone Cattle Co.*, 658 F.Supp. 1459, 1462 (N.D.Ill.1987).[34]

## A. Section 1962(a) [35]

■■■ The district court indicated that to state a claim under section 1962(a), the plaintiffs were required to "show" that the defendants received money (*i.e.*, "income") from a pattern of racketeering [activity] which they invested in an enterprise engaged in or which affected interstate or foreign commerce, and that the plaintiffs were injured by the investment of money, not merely by the pattern of racketeering.[36] 692 F.Supp. at 533. There is apparently no question as to the sufficiency of the plaintiffs' allegations of the enterprise element under any of the relevant RICO subsections. *See* section 1961(4). The district court dismissed the plaintiffs' claims [37] on the basis that they had alleged only one of the necessary elements, the receipt of income from a pattern of racketeering. 692 F.Supp. at 533; *Hill v. Bartle*, slip op. at 26–27; *Reed v. Bartle*, slip op. at 27.

First, we point out that we are not faced with absence of an allegation of enterprise effect on interstate commerce. *See Weft*,

**33.** It should be noted that the plaintiffs allege no mail, wire or other fraud by the defendants, and therefore are not required to adhere to the higher pleading standard of "particularity" mandated by Fed.R.Civ.P. 9(b). *See Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666, 673–676 (3d Cir.1988); *Seville*, 742 F.2d at 790–92. The *Saporito* court specifically approved providing RICO plaintiffs the opportunity for discovery to amend RICO fraud allegations insufficient under Fed.R.Civ.P. 9(b). 843 F.2d at 675–76.

**34.** Although we find all the complaints partially sufficient, even were we to find inadequate Kolimaga's unamended complaint, which is less detailed than the others, we would remand with instructions that he be permitted to amend it.

**35.** Section 1962(a) provides, in pertinent part, that:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a

principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**36.** Section 1964(c) requires that the plaintiffs must have suffered injury to their businesses or property resulting from defendants section 1962 violations.

**37.** "Defendants Asher, Bartle, Party and County have received income and profited from the above-described pattern of racketeering activity, and Defendants Party and County have aided and abetted in the pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. section 1962(a)." Rose Amended Complaint ¶ 63; Hill Amended Complaint ¶ 61; Reed Amended Complaint ¶ 66.

*Inc. v. G.C. Inv. Assocs.*, 630 F.Supp. 1138, 1142 (E.D.N.C.1986), *aff'd sub. nom. Weft, Inc. v. Georgaide*, 822 F.2d 56 (4th Cir.1987); *Fields v. Nat'l Republic Bank of Chicago*, 546 F.Supp. 123, 125 & n. 6 (N.D.Ill.1982). The plaintiffs' complaints assert that

> Defendants County and Party are enterprises affecting interstate commerce within the meaning of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. section 1961, et seq.

Rose Amended Complaint ¶ 56; Hill Amended Complaint ¶ 54; Reed Amended Complaint ¶ 59; Kolimaga Complaint ¶ 29. Here, given that "[t]he nexus with interstate commerce required by RICO is 'minimal,' " it cannot be said with certainty that the plaintiffs "could not prove a set of facts to support a nexus between the enterprise and interstate commerce." *R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1353 (5th Cir.1985).[38] To pick but one example, contracts by the county and party with out-of-state businesses would appear to be sufficient to satisfy this "minimal" standard.

The plaintiffs were also required to allege adequately that the defendants used or invested racketeering activity income in the establishment or operation of the enterprises. The plaintiffs apparently rely on language in *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d 1349, 1361 (3d Cir.1987), suggesting that a section 1962(a) action can be predicated on "enterprise ... profit.... [and] benefit from the racketeering activity challenged." Although the *Petro–Tech* court held that section 1962(a), unlike section 1962(c), encompasses enterprise aiding and abetting, as well as *respondeat superior* liability, it did not specifically address the "use or invest" element. *Id.* at 1360–61.

The determination of whether RICO pleadings are sufficient should not rest on whether the relevant allegations contain the correct talismanic language. Construing the complaints [39] in light of the liberal pleading standard to which we have previously alluded, there are sufficient grounds to infer that the requisite use or investment was properly pleaded.

However, in finding the section 1962(a) claim inadequate, the district court relied on two cases requiring a section 1962(a) injury to have been caused by the use or investment of income in the enterprise, rather than by the predicate racketeering acts or pattern.[40] *Rose*, 692 F.Supp. at 533; *Hill v. Bartle*, No. 88–1650, slip op. at 26–27; *Reed v. Bartle*, No. 88–1646, slip op. at 27. These cases were *Gilbert v. Prudential–Bache Securities, Inc.*, 643 F.Supp. 107, 109 (E.D.Pa.1986) and *Leonard v. Shearson Lehman/American Express Inc.*, 687 F.Supp. 177, 181 (E.D.Pa. 1988).

There is some contrary authority holding predicate act injury sufficient to provide standing to bring a claim under section 1962(a), without an allegation of injury caused by the use or investment of racketeering income. *See, e.g., Mid–State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 693 F.Supp. 666, 671 (N.D.Ill.1988); *Smith v. MCI Telecommunications Corp.*, 678 F.Supp. 823, 828–89 (D.Kan.1987); *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 647 F.Supp. 1026, 1033 (N.D.Ill. 1986). But the majority of courts that have addressed the issue have come to the same conclusion as the district court.

---

**38.** Although the court in *Weft* was evaluating a section 1962(c) claim, there appears to be no valid basis for differentiating between section 1962(a) and 1962(c) interstate commerce pleadings for sufficiency purposes. (It should be noted that "only the criminal enterprise must affect interstate commerce—not the conduct of each individual defendant." *United States v. Robinson*, 763 F.2d 778, 781 n. 4 (6th Cir.1985). Also, " 'the predicate acts' supporting a RICO violation may provide the nexus with interstate commerce." *R.A.G.S. Couture*, 774 F.2d at 1353.)

**39.** The RICO portions of the complaints reallege the claims, and the racketeering activities referenced within them, of the 42 U.S.C. § 1983 allegations. *See* Rose Amended Complaint ¶ 55; Hill Amended Complaint ¶ 53; Reed Amended Complaint ¶ 58; Kolimaga Complaint ¶ 28.

**40.** This question can be characterized as whether the plaintiffs have standing to sue under section 1964(c) for a violation of section 1962(a).

There are, for example, in addition to the cases the district court cited, *P.M.F. Servs., Inc. v. Grady*, 681 F.Supp. 549, 555–56 (N.D.Ill.1988); *NL Indus., Inc. v. Gulf & Western Indus., Inc.*, 650 F.Supp. 1115, 1128 (D.Kan.1986); *Eastern Corporate Fed. Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1537 (D.Mass.1986). Moreover, requiring the allegation of income use or investment injury "is consistent with both the literal language and the fair import of the language [of section 1692(a)]." *P.M.F. Servs.*, 681 F.Supp. at 555. Since the plaintiffs' complaints do not contain such allegations either facially or by reasonable inference, they are insufficient to maintain a claim under section 1962(a).[41]

### B. *Section 1962(c)*

To have adequately pled a section 1962(c) claim, the plaintiffs must have alleged, in addition to injuries under section 1964(c), that the defendants as "persons" were employed by or associated with an enterprise affecting interstate commerce, and that they participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity consisting of at least two acts of racketeering activity. *See* section 1962(c), 1961(1), (3), (4), (5); *see also Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. The district court addressed the interstate commerce, racketeering activity, and pattern of racketeering activity elements, finding the plaintiffs' allegations of each inadequate to state a claim.[42] 692 F.Supp. at 533–539. In addition, the court dismissed the claims against the party as a matter of law based on the identity of the party as person/defendant with the party as an enterprise.[43] 692 F.Supp. at 533. We first address the person/enterprise identity issue.

### 1. *Person/Enterprise Identity*

As the district court noted, the plaintiffs alleged that the party is both an enterprise according to section 1961(4), and a defendant (*i.e.*, person) according to section 1961(3). But since this court has held that a person charged with violating section 1962(c) cannot be the same entity as the enterprise, *see Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir.1988); *Petro–Tech, Inc. v. Western Co. of North America*, 824 F.2d at 1359; *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633–34 (3d Cir.1984), the district court dismissed the claim against the party. *Rose*, 692 F.Supp. at 533 (Rose Amended Complaint ¶¶ 56, 61); *Hill v. Bartle*, slip op. at 28 (Hill Amended Complaint ¶¶ 54, 59); *Reed v. Bartle*, slip op. at 28 (Reed Amended Complaint ¶ 59, 64). The plaintiffs maintain that the party should be considered an enterprise insofar as it "serves as a vehicle for some individuals' [*i.e.*, Asher's and Bartle's] predicate acts of racketeering," but as a person insofar as it conducted the affairs of the county as an enterprise. Rose brief at 48.

Our rationale in *Hirsch* for the requirement of separate person and enterprise identity for purposes of section 1962(c) was based on what we conceived of as "the Congressional scheme to orient section 1962(c) toward punishing the infiltrating criminals rather than the legitimate corporation which might be an innocent victim of the racketeering activity in some circumstances." 751 F.2d at 634. We further explained this rationale in *Petro–Tech*: "We ... held [in *Hirsch*] that section 1962(c) was intended to govern only those instances in which an 'innocent' or 'passive' corporation is victimized by the RICO 'persons,' and either drained of its own money or used as a passive tool to extract money from third parties." 824 F.2d at 1359.

---

**41.** We address the sufficiency of the plaintiffs' racketeering activity claims in our section 1962(c) analysis.

**42.** As we have indicated above in our review of the district court's section 1962(a) determination, we hold that the plaintiffs' interstate commerce allegation is sufficient.

**43.** The plaintiffs did not allege that the county violated section 1962(c). Since Kolimaga did not allege a section 1962(c) violation by the party, the district court's dismissal of appellant Kolimaga's putative section 1962(c) claim against the party was unnecessary. *Kolimaga v. Bartle*, slip op. at 12.

■ We see nothing in our decisions that would necessarily preclude an entity from functioning both as an "innocent victim" of certain racketeering activity, and thus be the enterprise under section 1962(c), and as a perpetrator of other such activity, and thus be a person under that subsection. The complaints describe Asher and Bartle as "acting for" or as "agents" of the party in the commission of alleged racketeering acts. *See* Rose Amended Complaint ¶¶ 12, 15, 27; Hill Amended Complaint ¶¶ 11, 14, 26; Reed Amended Complaint ¶¶ 18, 21. These acts would have victimized the county "enterprise" (and its residents) as well as the plaintiffs. Therefore, we hold that the plaintiffs are not barred from alleging that the party is liable under section 1962(c).

### 2. *Racketeering Activity*

■ Rose, Hill, and Reed alleged that various acts of bribery, extortion, and macing by Bartle and Asher constituted instances of racketeering activity under section 1962(c), as defined by section 1961(1). Rose Amended Complaint ¶¶ 57, 58; Hill Amended Complaint ¶¶ 55, 56; Reed Amended Complaint ¶¶ 61, 63.[44] Kolimaga alleged only acts of extortion and macing by Bartle and Asher. Kolimaga Complaint ¶ 30.[45]

Absent acts indictable under specified federal statutes, section 1961(1) requires that such acts of bribery and extortion "be chargeable under State law and punishable by imprisonment for more than one year." The district court found that since none of the acts cited by the plaintiffs in their complaints comprised such acts, taking into consideration that the relevant federal bribery statute (18 U.S.C. § 201) "is concerned with bribery of *federal* officials," the allegations of racketeering activity were inadequate. *Rose,* 692 F.Supp. at 534; *Hill,* slip op. at 29; *Reed,* slip op. at 29; *Kolimaga,* slip op at 13.

The district court reviewed the bribery, extortion, and macing allegations under four Pennsylvania criminal statutes, 18 Pa. Cons.Stat.Ann. § 4701 (bribery in official and political matters);[46] 18 Pa.Cons.Stat. Ann. § 3923 (theft by extortion)[47]; 18 Pa.

44. The bribery, extortion and macing allegations of Hill and Reed are identical to those of Rose, which read as follows:

57. Defendants Asher's and Bartle's acts of bribery and extortion against plaintiff, Defendants Smyth and Goodman, and coconspirators Murray and McNulty each constitute instances of "racketeering activity" within the meaning of 18 U.S.C. section 1961(1).

58. Other acts of bribery, extortion and "macing" of government employees, contractors and suppliers, examples of which are provided above, have been regularly engaged in by defendants to the point of being widely regarded as routine, and constitute separate instances of "racketeering activity" within the meaning of the statute.

45. Kolimaga's extortion and macing allegation reads as follows:

30. The acts of extortion by defendants Asher, Bartle and co-conspirators against plaintiff constitute "racketeering activity" within the meaning of 18 U.S.C. section 1961(1). Acts of extortion and "macing" of County employees have been regularly and routinely engaged in by defendants.

46. This statute states, in pertinent part:
(a) Offenses defined.—A person is guilty of bribery, a felony of the third degree, if he offers, confers or agrees to confer upon another, or solicits, accepts or agrees to accept from another:

(1) any pecuniary benefit as consideration for the decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter by the recipient;

(2) any benefit as consideration for the decision, vote, recommendation or other exercise of official discretion by the recipient in a judicial, administrative or legislative proceeding; or

(3) any benefit as consideration for a violation of a known legal duty as public servant or party official.
A third-degree felony is punishable by imprisonment of up to seven years. 18 Pa.Cons.Stat.Ann. § 106(b)(4).

47. This statute states, in pertinent part:
(a) Offense Defined.—A person is guilty of theft if he intentionally obtains or withholds property of another by threatening to:

(1) commit another criminal offense;

(2) accuse anyone of a criminal offense;

(3) expose any secret tending to subject any person to hatred, contempt or ridicule;

(4) take or withhold action as an official, or cause an official to take or withhold action;
. . .

(6) testify or provide information or withhold testimony or information with respect to the legal claim or defense of another or

Cons.Stat.Ann. § 4702 (threats and other improper influence in official and political matters) [48]; and 25 Pa.Stat.Ann. § 2374 (anti-macing). [49] The district court held the allegations inadequate under all four. *Rose*, 692 F.Supp. at 534–37; *Hill*, slip op. at 29–39; *Reed*, slip op. at 29–39; *Kolimaga*, slip op. at 13–18.

Specifically, the district court found that the plaintiffs' allegations that Rose and Hill were improperly pressured by Asher and Bartle to assist party fund-raising activities did "not rise to the level of state law bribery or extortion. While these statements [of Bartle and Asher] may be construed as threatening, interfering, and perhaps 'macing', they cannot be construed as RICO bribery or extortion"; and that the alleged demand by Asher for a $250

party contribution, lacking an allegation of " 'unlawful harm,' or harm of any sort," could also only be regarded as macing, not rising to the level of extortion. *See, e.g., Rose*, 692 F.Supp. at 535–36; *see* Rose Amended Complaint ¶¶ 35, 35(a), 35(b); Hill Amended Complaint 34, 34(a), 34(b); [50] The district court found that since under the applicable state statute the crime of macing is a misdemeanor punishable by a sentence not exceeding one year in length, these allegations failed to meet the penalty requirement of RICO section 1961(1). *See Rose*, 692 F.Supp. at 535; *Kolimaga*, slip op. at 16–17.

The district court also rejected as inadequate claims that the defendants' alleged malicious prosecution and abuse of process were orchestrated by Asher and Bartle,

---

(7) inflict any other harm which would not benefit the actor.

Theft is a third-degree felony if the amount involved exceeds $2,000; otherwise, it is a misdemeanor. 18 Pa.Cons.Stat.Ann. section 3903(a).

**48.** This statute states, in pertinent part:

(a) Offenses defined.—A person commits an offense if he:

(1) threatens unlawful harm to any person with intent to influence his decision, opinion, recommendation, vote or other exercise of discretion as a public servant, party official or voter;

(2) threatens unlawful harm to any public servant with intent to influence his decision, opinion, recommendation, vote or other exercise of discretion in a judicial or administrative proceeding; or

(3) threatens unlawful harm to any public servant or party official with intent to influence him to violate his known legal duty.

\* \* \* \* \* \*

(c) Grading.—An offense under this section is a misdemeanor of the second degree unless the actor threatened to commit a crime or made a threat with intent to influence a judicial or administrative proceeding, in which cases the offense is a felony of the third degree.

**49.** *This statute states, in pertinent part:*

It shall be unlawful for any political committee or any member, employe or agent thereof, or for any public officer or employe, or any other person whatsoever, directly or indirectly, to demand from any public officer, subordinate or employe holding any office or position of honor, trust or profit under this Commonwealth, or otherwise engaged or employed in the service of the Commonwealth or

employed by, or in any way engaged in the service of, any political subdivision ... any assessment or percentage of any money or profit, or their equivalent in any thing of value, with the understanding express or implied, that the same may be used or shall be used for political purposes....

Violation of this provision is a misdemeanor punishable by a term of imprisonment not exceeding one year or a fine not exceeding one thousand dollars or both. 25 Pa.Stat.Ann. § 2375.

**50.** Paragraphs 30 to 36 of Hill's amended complaint were incorporated by reference within Reed's amended complaint. *Reed*, slip op. at 32. *See* Reed Amended Complaint ¶ 40. Kolimaga's complaint lacks these allegations. Those of Rose, identical save for different references to "plaintiff" and "Joseph Rose," follow:

35. Plaintiff was himself the victim of improper pressure by Defendants Bartle and Asher on numerous occasions, for example:

a. At meetings between Sheriff Hill, plaintiff, and Defendant Bartle that were supposed to be devoted to the Sheriff's Department budget, Bartle spent much of the meeting time complaining that Sheriff's Department personnel were not buying enough tickets to Party-sponsored events. Bartle told Hill and plaintiff that they and the Department employees owed their jobs to the Party.

b. After a meeting called by Defendant Asher to complain about the Sheriff's policy of not releasing Committeepersons to do Party work while on duty, Asher instructed plaintiff to attend an upcoming Party event, and told him he expected "100% cooperation" from plaintiff and his employees. He also demanded that plaintiff contribute $250 for a campaign advertisement.

without any legitimate law enforcement purpose, by means of threats of detriment and promises of benefit to Smyth, Goodman, McNulty,[51] and Vance. *Rose*, 692 F.Supp. at 536–37; *Hill*, slip op. at 35–39; *Reed*, slip op. at 35–39; *Kolimaga*, slip op. at 17–18. The plaintiffs alleged that Smyth was promised a common pleas judgeship, and Goodman, Vance, and McNulty were all offered help for their political careers. Rose Amended Complaint ¶¶ 41, 41(d), 42(b), 42(e), 46, 47, 49, 50; Hill Amended Complaint ¶¶ 39, 40(c), 40(e), 40(f), 41(c), 44, 45, 47; Reed Amended Complaint ¶¶ 48(f), 49(b), 49(e), 50, 52; Kolimaga Complaint ¶¶ 16, 18, 23.[52]

The district court based its holding in regard to this issue on several grounds. First, the court found that various alleged statements to Rose by Smyth, McNulty, and Vance, especially by Vance in his putative attempt to induce Rose to commit perjury by giving false testimony against Hill, suggesting Bartle might thereupon give him his job back, did "not constitute bribery or extortion," since "[p]laintiff[s] ha[ve] not shown that Asher or Bartle knew the testimony to be false," and since "[t]here is no allegation that Bartle, who had the power as County Commissioner to reinstate [Rose], had, in fact, made such a promise to Rose." *Rose*, 692 F.Supp. at 536, *Hill*, slip op. at 35–36; *Reed*, slip op. at 35–36. *See Kolimaga*, slip op. at 17–18.

The district court also found that the plaintiffs' claims of statements to Rose by Smyth and McNulty indicating that they were pursuing the prosecution in return for promises of positions comprised "vague and conclusory allegations as to Asher's and Bartle's motives in their support of the criminal prosecution [which] are insufficient to support ... [their] RICO claim[s]." *Rose*, 692 F.Supp. at 537; *Hill*, slip op. at 37; *Reed*, slip op. at 37; *see Kolimaga*, slip op. at 17.

Finally, the district court found the allegations of improper pressure on District Justice Murray insufficient since the plaintiffs had "submitted no evidence of extortion or bribery by Asher and Bartle in connection with Justice Murray," and since the allegations were "made 'upon information and belief' and do not approach the standard of pleading required under RICO;" and because of failure to "show[ ] that Asher and Bartle were pressuring Justice Murray to violate his legal duties in any way," since there was not "a complete lack of probable cause" to establish a prima facie case requiring plaintiffs to be held over for trial. *Rose*, 692 F.Supp. at 537; *see Kolimaga*, slip op. at 17–18.

We first note that "[a]lthough there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible," and that "permitting allegations on information and belief is a practical necessity." 5 C. Wright & A. Miller § 1224, at 155–56; *see General Accident Ins. Co. of America v. Fidelity and Deposit Co. of Maryland*, 598 F.Supp. 1223, 1231 (E.D.Pa.1984); *Gitterman v. Vitoulis*, 564 F.Supp. 46, 50 (S.D.N.Y.1982).

In our consideration of the role of state law in RICO offenses we are guided by the principles set forth in *United States v. Forsythe*, 560 F.2d 1127 (3d Cir.1977), a RICO criminal case involving allegations of bribery of public officials. In construing the "act[s] ... involving ... bribery" language of section 1961(1)(A), we noted that "[t]he legislative history of 18 U.S.C. § 1961(1)(A) specifically states that 'state offenses are included by generic designation,'" 560 F.2d at 1137 (quoting 1970 U.S. Code, Cong. & Admin.News at 4007, 4032). We recognized that

[t]his statement manifests the legislative intent to incorporate the Supreme Court's holding in *United States v. Nardello*, 393 U.S. 286, 89 S.Ct. 534 [21 L.Ed.

---

**51.** Bernard McNulty was a Montgomery County assistant district attorney during the prosecution referred to in the plaintiffs' complaints. *See* page 338.

**52.** The absence of reference to any specific employment opportunities allegedly offered by Asher and Bartle, noted by the district court, is not so egregious as to fail to pass muster under the notice pleading standard to which we have already alluded.

2d 487] (1969), into the RICO statute. *Nardello* stands for the proposition that alleging ·a state violation which falls within the generic category of the predicate offense is adequate to charge a violation of the Travel Act [18 U.S.C. § 1952].

560 F.2d at 1137 (citation omitted).

After indicating that "[t]he test for determining whether the charged acts fit into the generic category of the predicate offense is whether the indictment charges a type of activity generally known or characterized in the proscribed category, namely, any act or threat involving bribery," we concluded that "[t]he generic description of bribery is 'conduct which is intended, at least by the alleged briber, as an assault on the integrity of a public office or an official action.'" *Id.* at 1137 & n. 23 (quoting *United States v. Dansker*, 537 F.2d 40, 48 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977)). In regard to extortion, the *Nardello* court concluded that "the inquiry is not the manner in which States classify their criminal prohibitions but whether the particular state involved prohibits the extortionate activity charged." 393 U.S. at 295, 89 S.Ct. at 539. The Court characterized this activity as that by which "funds are obtained from the victim with his consent produced by the use of force, fear, or threats." *Id.;*

*see also United States v. Frumento*, 563 F.2d 1083, 1087–88 (3d Cir.1977), *cert. denied*, 434 U.S. 1072, 98 S.Ct. 1256, 1258, 55 L.Ed.2d 775, 776 (1978); *United States v. Garner*, 837 F.2d 1404, 1419 (7th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2022, 100 L.Ed.2d 608, — U.S. —, 108 S.Ct. 2914, 101 L.Ed.2d 945, — U.S. —, 109 S.Ct. 244, 102 L.Ed.2d 232 (1988).

■ The question, then, which the district court failed to address, and we must, is whether according to the pleading standards to which we have already adverted the plaintiffs have sufficiently alleged bribery and extortion activities by Asher and Bartle under the generic standard adopted by this court in *Forsythe*. Taking the allegations as true, giving them the benefit of all fair inferences, and taking into consideration the availability of discovery "to fill in the details," we hold these allegations sufficient to state viable claims, since there may be sufficient provable facts to support them. *See Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 83 n. 1 (3d Cir.1987); *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d at 790.[53]

First, we consider whether the plaintiffs have sufficiently alleged "'conduct ... intended ... as an assault on the integrity of a public office or an official action'" which constitutes bribery for purposes of RICO

---

**53.** We note that the Fed.R.Civ.P. 9(b) requirement that fraud allegations be pleaded with greater particularity than others is inapplicable here, since the plaintiffs allege no fraud on the part of Asher or Bartle. *See Saporito v. Combustion Eng'g, Inc.*, 843 F.2d at 675. Although the plaintiffs do allege malice, intent, and knowledge on the part of the defendants, *see, e.g.,* Rose Amended Complaint ¶ 38; Hill Amended Complaint ¶ 37; Reed Amended Complaint ¶ 41; Kolimaga Complaint ¶ 22, these may be pleaded "generally." Fed.R.Civ.P. 9(b). We agree with the district court's holding that macing *qua* macing cannot constitute a RICO racketeering activity, since under Pennsylvania law macing is a misdemeanor punishable by a term of imprisonment not exceeding one year. 25 Pa.Stat.Ann. §§ 2374, 2375. We observe, however, that conduct constituting macing may rise to the level of generic extortion.

The district court also rejected as inadequate the racketeering activity allegations of all the plaintiffs save for Kolimaga that were based on Asher's conviction of bribery solicitation on behalf of the Pennsylvania State Republican Party. *See* Rose Amended Complaint ¶ 59; Hill Amended Complaint ¶ 57; Reed Amended Complaint ¶ 62; *see also United States v. Asher*, 648 F.Supp. 320 (M.D.Pa.1986), *aff'd*, 854 F.2d 1483 (3d Cir. 1988), *cert. denied,* — U.S. —, 109 S.Ct. 836, 102 L.Ed.2d 969 (1989). The district court found that this activity "is not alleged to have been related to Asher's participation in the affairs of the alleged enterprises in this case. Montgomery County and the Républican Party of Montgomery County are separate entities from· the State Republican Party." *Rose*, 692 F.Supp. at 536; *Hill*, slip op. at 34–35, *Reed*, slip op. at 34–35. Given our conclusions regarding the sufficiency of the plaintiffs' other racketeering activity allegation, the sufficiency of this allegation is not determinative. But we do note that according to RICO section 1961(4), "'enterprise' includes ... any ... group of individuals associated in fact," and that whether the State and Montgomery County Republican Parties are "separate entities" is hardly a foregone conclusion.

racketeering activity. *Forsythe,* 560 F.2d at 1137 n. 23. Clearly, they need not allege the specific elements delineated in the state law bribery statute, as long as Pennsylvania law penalizes the alleged generic conduct by imprisonment of more than one year.

The plaintiffs contended that criminal proceedings were instituted and conducted against them by Smyth, Vance, and McNulty, with no "legitimate law-enforcement purpose," at the behest of Asher and Bartle, through offers of benefit to their political careers, as well as through threats to those careers. Rose Amended Complaint ¶¶ 40, 41(g), 42(b), 42(e), 47, 49; Hill Amended Complaint ¶¶ 39, 40(f), 41(b), 41(e), 47; Reed Amended Complaint ¶¶ 45, 46, 47, 48(f), 49(b), 49(e), 50, 52; Kolimaga Complaint ¶¶ 16, 23. These bribery allegations are sufficient under RICO, since they constitute conduct proscribed under 18 Pa. Cons.Stat.Ann. § 4701(a)(2), (3).

We next consider whether the plaintiffs' extortion pleadings are adequate. The same paragraphs of the complaints alleging bribery by Asher and Bartle through offers to benefit Smyth, Goodman, McNulty, and Vance for the purpose of inducing unlawful conduct also refer to threats to accomplish the same end. We need not apply the *Nardello* generic extortion standard here, since we find the extortion allegations sufficient to state claims under the language of 18 Pa.Cons.Stat.Ann. § 4702(a)(2), (3), which prohibits "threaten[ing] unlawful harm to any public servant with intent to influence his decision, opinion, recommendation, . . . or other exercise of discretion in a judicial or administrative proceeding," and "threaten[ing] unlawful harm to any public servant . . . with intent to influence him to violate his known legal duty." [54]

As we noted above, the district court found the plaintiffs' allegations insufficient primarily because they presented no evidence of extortion or bribery, concluding that the "vague and conclusory allegations as to Asher's and Bartle's motives in their support of the criminal prosecution are insufficient to support . . . [their] RICO claim[s]." *Rose,* 692 F.Supp. at 537. But all that is required of the plaintiffs is to "specify the nature of the predicate acts to a degree that will allow the defendants to comprehend the specific acts to which they are required to answer." *Ray v. Karris,* 780 F.2d 636, 645 (7th Cir.1985). "[M]ere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago,* 760 F.2d 765, 767 (7th Cir.1985). To put it in the language we employed in *Seville,* "the district court confused what must be pleaded with what must be proved." 742 F.2d at 790.[55]

### 3. *Pattern of Racketeering Activity*

■ The district court also dismissed the plaintiffs' section 1962(c) claims "for failure to allege a pattern of racketeering activity," since "[t]he extent of . . . [the] 'racketeering' activity does not meet the 'continuity' requirements of *Sedima.*" *Rose,* 692 F.Supp. at 537, 539; *Hill,* slip op. at 39–44; *Reed,* slip op. at 39–44; *Kolimaga,* slip op. at 18–21. See Rose Amended Complaint ¶ 60; Hill Amended Complaint ¶ 58; Reed Amended Complaint ¶ 63; Kolimaga Complaint ¶ 32.

Violation of section 1962(c) requires that the defendants have "conduct[ed] or participate[d] . . . in the conduct or in the enterprise[ ]s' affairs through a pattern of racketeering activity," which pattern "requires at least two acts of racketeering activity." Sections 1962(c), 1961(5).

In *Sedima* the Supreme Court made it clear that "two isolated acts of racketeering do not constitute a pattern" and that

---

54. "[A] threat with intent to influence a judicial . . . proceeding . . . is a felony of the third degree." 18 Pa.Cons.Stat.Ann. § 4702(c). Such third-degree felonies are punishable a term of imprisonment of not more than seven years. 18 Pa.Cons.Stat.Ann. § 106(b)(4).

55. Since we hold the plaintiffs' allegations sufficient under the state statutes referred to by the district court, we need not address the question of whether the pleadings are sufficient under 18 Pa.Cons.Stat.Ann. § 4952 (Intimidation of witnesses or victims). Nor need we consider their sufficiency under federal law.

the crucial requirement to establish a pattern is " '*continuity plus relationship* ... combin[ing] to produce a pattern.' " *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14 (quoting S.Rep. No. 97–617 at 158 (1969)). "[T]he predicate acts relied upon to support a conviction under RICO must 'have the same or similar purposes, results, participants, victims, or methods of commission, or [must be] otherwise ... interrelated by distinguishing characteristics,' so as not to be 'isolated events.' " *United States v. Grayson*, 795 F.2d 278, 290 (3d Cir.1986) (quoting, *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 978, 481 U.S. 1018, 107 S.Ct. 1899, 95 L.Ed. 2d 505 (1987). (We note that the Supreme Court's use of the disjunctive rather than conjunctive is not without significance.) We have adopted a "flexible interpretation of RICO's pattern requirement." *Environmental Tectonics v. W.S. Kirkpatrick, Inc.*, 847 F.2d 1052, 1063 (3d Cir.), *petition for cert. filed* (U.S., June 17, 1988). In *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36 (3d Cir.1987), we reversed the district court's dismissal of a RICO claim for failure to allege adequately a pattern of racketeering activity, holding that a single non-open-ended scheme was sufficient to constitute a RICO pattern. We indicated that determining the "continuity" adequacy of an allegation requires "an inquiry into the extent of the racketeering activity.... [which] depends on the circumstances of the particular case." *Id.* at 40. We also observed that in analyzing the continuity and relationship requirement, "a combination of specific factors [should be considered,] such as the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Id.* at 39. The pattern in *Barticheck* involved twenty-three plaintiffs, several defendants, and a number of allegedly unlawful misrepresentations over an indeterminate period of time. *Id.* at 37.

In *Marshall–Silver Constr. Co. v. Mendel*, 835 F.2d 63 (3d Cir.1987), *petition for cert. filed* (February 12, 1988), we held that a pattern of racketeering activities allegation must refer to "criminal activity that, because of its organization, duration, and objectives ... posed ... a threat of a series of injuries over a significant period of time," finding an allegation comprising "a single victim, a single injury, and a single short-lived scheme with only two active perpetrators" insufficient. *Id.* at 66–67.

The district court concluded that even regarding the plaintiffs' racketeering activity claims as, *arguendo*, sufficient, the plaintiffs had

> successfully alleged only six potential acts of extortion or bribery—the temporary withholding of ... [Rose's] pay in 1979, and the extortion or bribery of Smyth, Goodman, Vance, McNulty, and Justice Murray in 1983 to falsely prosecute Sheriff Hill and his top assistant for macing. Plaintiff[s] ha[ve] alleged an isolated incident which occurred in 1979 and a single scheme with a single goal which occurred in 1983. The extent of this 'racketeering activity' does not meet the 'continuity' requirements of *Sedima*. The activity is not the type which, 'because of its organization, duration, and objectives poses ... a threat of a series of injuries over a significant period of time.'

*Rose*, 692 F.Supp. at 539 (citation omitted) (*quoting Marshall Silver*, 835 F.2d at 66–67); *Hill*, slip op. at 43–44; *Reed*, slip op. at 43–44.[56]

The plaintiffs dispute this conclusion, maintaining that they had sufficiently alleged two patterns of racketeering: the first comprising "racketeering acts of polit-

---

**56.** Only the complaints of Rose and Reed (by reference to Rose's complaint) state a claim regarding the 1979 withholding of Rose's pay. Rose Amended Complaint ¶ 31(a). The district court found this claim insufficient as an allegation of extortion. *Rose*, 692 F.Supp. at 539; *Reed*, slip op. at 43, *Hill*, slip op. at 43. The district court's *Kolimaga* opinion refers only to five "potential acts," since Kolimaga's complaint did not refer to the pay issue. Slip op. at 21. (Although the district court refers to such a claim in Hill's complaint, we have been unable to locate it.) Given our pattern of racketeering holding, we need not resolve this issue.

ical coercion, bribery, extortion and intimidation committed against County employees and contractors," and the second "racketeering acts of bribery, extortion and illegal coercion" in furtherance of the malicious prosecution of plaintiffs. Rose brief at 44–45.

Following our holding in *Barticheck* that only one scheme is required to form the basis of a RICO pattern allegation, but also recognizing that "a pattern of racketeering for RICO purposes involves something more than proof of a series of isolated offenses by persons connected with the RICO enterprise," *Town of Kearny v. Hudson Meadows Urban Renewal Corp.*, 829 F.2d 1263, 1268 (3d Cir.1987), we hold that the alleged racketeering activities by Asher and Bartle directed at the plaintiffs are sufficient to form a pattern of racketeering activity for the purpose of RICO pleading.

Although we have rejected as insufficient a RICO pattern allegation naming only two "active perpetrators," *Marshall–Silver*, 835 F.2d at 67, the number of "persons" in itself is not decisive. There is no magical qualifying number. Rather we must consider the factors to which we referred in *Barticheck*, as well as any other relevant factors. 832 F.2d at 39. Indeed, the defendants in *Sedima* consisted only of a corporation and two of its officers. *Cf. State Farm Mut. Auto. Ins. Co. v. Rosenfield*, 683 F.Supp. 106, 110 (E.D.Pa.1988) (individual's four acts of mail fraud during a two-year period against three insurance companies sufficient to comprise RICO pattern); *Blue Cross of Western Pennsylvania v. Nardone*, 680 F.Supp. 195, 199 (W.D.Pa.1988) (individual's repeated submission of false prescription reimbursement claims sufficient to comprise RICO pattern). The number of RICO defendants here, then, is not in itself inadequate.

Furthermore, whether the predicate acts in question here consisted of the actual malicious prosecutions or the alleged conduct inducing them, the number and similarity of the acts appears sufficient under the standard we set forth in *Barticheck*, where only two acts were alleged (although the court regarded as proper the inference that more than two actually occurred). 832 F.2d at 39.

The plaintiffs comprised the four direct victims here. Since even one "victim" may be adequate to allege a section 1961(5) pattern, there appears no insufficiency in regard to the number of victims. Moreover, the alleged pattern of racketeering activities, resulting, if regarded as true, in the corruption of the Montgomery County judicial system, affected not merely the plaintiffs, but the county's citizens as a whole, thus "creat[ing]" an even larger class of victims." *Environmental Tectonics*, 847 F.2d at 1063 (citing *Town of Kearny*, 829 F.2d at 1268).

Since in *Saporito*, 843 F.2d at 677, we held a period of six months sufficient to meet the duration requirements adumbrated in *Barticheck*, and the alleged predicate acts occurred from 1983 to December, 1984 (Rose Amended Complaint ¶ 14), February, 1985 (Kolimaga Complaint ¶ 13), or March, 1985 (Hill Amended Complaint ¶ 13; Reed Amended Complaint ¶ 20), the time period here does not pose a problem.

In short, the alleged racketeering activities of Asher and Bartle were not "isolated events," but "were all part of a related pattern of ... corruption for the benefit of the common participants." *Town of Kearny*, 829 F.2d at 1268. Taking into consideration the totality of circumstances, we hold the plaintiffs' pattern of racketeering activity allegations sufficient.[57]

## C. Section 1962(d)

██ The district court dismissed the plaintiffs' section 1962 conspiracy claims, stating that "a mere general allegation of conspiracy is insufficient." *Rose*, 692 F.Supp. at 539; *Hill*, slip op. at 44; *Reed*, slip op. at 44; *Kolimaga*, slip op. at 22 (*quoting Kalmanovitz v. G. Heileman Brewing Co.*, 595 F.Supp. 1385, 1400–01 (D.Del.1984), *aff'd* 769 F.2d 152 (3d Cir.

---

**57.** Given the "equivocal import" of the *Barticheck* factor of "the character of the unlawful activity" we need not consider it here. *See Saporito*, 843 F.2d at 677 n. 17.

1985)). *See* Rose Amended Complaint ¶ 62 [58]; Hill Amended Complaint ¶ 60; Reed Amended Complaint ¶ 65; Kolimaga Complaint ¶ 32. The *Kalmanovitz* court stated that

> [t]he plaintiffs must plead with particularity the 'circumstances' of the alleged wrongdoing in order to place the defendants on notice of the precise misconduct with which they are charged. Only allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and certain actions of the alleged conspirators taken to achieve that purpose, will be deemed sufficient.

595 F.Supp. at 1401 (citation omitted). The court went on to state that "an inference [of conspiracy] … from the Complaint … [is] no substitute for the requirement that the circumstances of the conspiracy be pleaded with specificity." *Id.; see also Seville*, 742 F.2d at 792 n. 8 [59]; *Alfaro v. E.F. Hutton & Co.*, 606 F.Supp. 1100, 1117–18 (E.D.Pa.1985).

"[I]n order to state a claim under RICO subsection [1692](d), a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c)." *Odesser v. Continental Bank*, 676 F.Supp. 1305, 1312 (E.D.Pa.1987). "[A]llegations of conspiracy are not measured under the … [Fed.R. Civ.P.] 9(b) standard, which requires great-

er particularity of allegation of fraud, but are measured under the more liberal … [Fed.R.Civ.P. 8(a)] pleading standard." [60] 676 F.Supp. at 1313. A conspiracy claim must also contain supportive factual allegations. *Black & Yates, Inc. v. Mahogany Ass'n, Inc.*, 129 F.2d 227, 231–32 (3d Cir.), *cert. denied*, 317 U.S. 672, 63 S.Ct. 76, 87 L.Ed. 539 (1942). The allegations must be sufficient to "describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy." [61] *Alfaro*, 606 F.Supp. at 1117–18.

Although mere inferences from the complaint are inadequate to establish the necessary factual basis, *Kalmanovitz*, 595 F.Supp. at 1401, a court may look to any "factual allegations of particular acts" within the complaint as a whole incorporated by the conspiracy claim to provide this basis. *Odesser*, 676 F.Supp. at 1313.

Since the plaintiffs have incorporated by reference within their RICO claims their 42 U.S.C. § 1983 allegations, the sufficiency of their RICO conspiracy claims depends partially on the facts alleged within their section 1983 allegations. *See* Rose Amended Complaint ¶ 55; Hill Amended Complaint ¶ 53; Reed Amended Complaint ¶ 58; Kolimaga Complaint ¶ 28.

These factual allegations are sufficiently specific and precise to give "fair notice" to the defendants. *Odesser*, 676 F.Supp. at 1313. For example, the plaintiffs claim that Bartle and Asher "conspired … to

**58.** "Defendants Asher, Bartle and Party have conspired to engage in the conduct of an enterprise's affairs—the County—and Defendants Bartle and Asher have conspired to engage in the conduct of two enterprises' affairs—the Party and the Couty [*sic*]—through patterns of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. section 1962(d)." The conspiracy complaints of the other plaintiffs except for the spelling error, are identical, save for Kolimaga's, who did not name the party as a co-conspirator, although the district court refers to such an allegation.

**59.** "[Plaintiff's] Complaint alleges only that the defendants conspired to commit the acts of fraud that constitute the alleged pattern of racketeering activity.… [but] section 1962(d) prohibits conspirators to knowingly further the af-

fairs of the enterprise; mere agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under section 1962(d)."

**60.** *I.e.*, a conspiracy complaint "must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the opposing side to prepare an adequate responsive pleading." 5 C. Wright & A. Miller, § 1233 at 181.

**61.** "[T]o be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts." *United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.), *cert. denied*, 474 U.S. 906, 971, 106 S.Ct. 275, 336, 88 L.Ed.2d 236, 321 (1985).

remove [plaintiffs] from office ... by means of false criminal charges," through "threats ... [and] intimidation, and ... the conspiracy at the heart of this Complaint." Rose Amended Complaint ¶¶ 12, 13; Hill Amended Complaint ¶¶ 11, 12; *see* Reed Amended Complaint ¶¶ 18, 19; Kolimaga Complaint ¶ 13. The plaintiffs' complaints also allege specific time frames for the alleged conspiracy. Moreover, the plaintiffs first refer to the "specific" or "particular" acts comprising the alleged conspiracy and then outline them in some detail. *See* Rose Amended Complaint ¶ 14; Hill Hill Amended Complaint ¶ 13, Reed Amended Complaint ¶ 20; Kolimaga Complaint ¶ 13. (*See also* portions of complaint referred to in our racketeering activities analysis *supra*.) Furthermore, we may infer from the language of the plaintiffs' RICO conspiracy claims, each of which refer to a "conspiracy to engage in the conduct of an enterprise's affairs," the requisite *mens rea* comprising knowing furtherance of the enterprises' affairs. *See Seville*, 742 F.2d at 792 n. 8.

## V. INSTRUCTIONS ON REMAND

In summary, we will affirm the district court's dismissal of the plaintiffs' RICO claims against Smyth, Goodman, and Vance, (*see* footnote 28 at page 355) as well as its dismissal of the plaintiffs' RICO section 1962(a) claims against Asher, Bartle, the party, and the county. Thus, the claims under section 1962(a) are entirely dismissed. We also agree with the district court's holding that macing cannot comprise a racketeering activity under RICO. The district court should not address these matters on remand since amendment could not cure the defects in the pleadings with regard to these two issues. We will reverse the district court's dismissal of the plaintiffs' RICO section 1962(c) and section 1962(d) claims against Asher, Bartle, and the party. Inasmuch as the sufficiency of the the pleadings involving these latter claims has been decided by this court, they may not again be dismissed as insufficient.

Furthermore, we will affirm the district courts' dismissal with prejudice of all of the plaintiffs' section 1983 claims against Smyth and Goodman on the ground that they are absolutely immune for all of the alleged activities which form the basis of the plaintiffs' civil rights claims against them. We also will affirm the court's dismissal of the plaintiffs' section 1983 claims against all the defendants for false arrest and abuse of process as time-barred.

However, we will vacate the district court's dismissal with prejudice of Hill, Rose and Kolimagas' section 1983 claims for malicious prosecution and conspiracy to maliciously prosecute. We will remand to allow the district court to consider motions by these plaintiffs to so amend their complaints to allege with the requisite specificity that the presentment was procured by fraud, perjury or other corrupt means. Of course, if the plaintiffs' complaints are not amended the remaining defendants may again move to dismiss. Further, we do not bar them from making a similar motion if they regard the amended pleading as insufficient. We reiterate our rejection of the plaintiffs' contention that discovery is necessary to enable them to amend their complaints.

In the event that the district court ultimately renews its consideration of summary judgment, we instruct that the parties must be given a reasonable opportunity to conduct discovery and to submit materials before the court may rule on the motion.

In addition, the district court may exercise jurisdiction over the pendent state law claims over the remaining defendants. Accordingly, the plaintiffs may elect, on remand, to pursue those claims in the district court. The orders appealed will be affirmed in part, reversed in part and vacated in part and the cases will be remanded to the district court for further proceedings consistent with this opinion. The parties will all bear their own costs on this appeal.